Ann GRIESEL, Plaintiff–Appellee,

v.

B.D. HAMLIN, Defendant–Appellant.

No. 91–8650.

United States Court of Appeals,
Eleventh Circuit.

June 17, 1992.

Albert S. Johnson, County Atty., Joan F. Roach, Chief Staff Atty., Decatur, Ga., for defendant-appellant.

Frank J. Beltran, Beltran and Coffey, Ralph Perales, Irwin W. Stolz, Jr., Gambrell, Clarke, Anderson and Stolz, Seaton D. Purdom, Atlanta, Ga., for plaintiff-appellee.

Before TJOFLAT, Chief Circuit Judge, ANDERSON, Circuit Judge, and ALAIMO *, Senior District Judge.

PER CURIAM:

## I. INTRODUCTION

Appellant, D.B. Hamlin, appeals a district court denial of his motion for summary judgment on the ground that Hamlin

---

* Honorable Anthony A. Alaimo, Senior U.S. District Judge for the Southern District of Georgia, sitting by designation.

is not entitled to official immunity under Georgia law.

## II.  FACTS

This wrongful death action was filed initially in state court on July 15, 1988.  Appellee, Ann Griesel, alleged that appellant Hamlin had caused the death of her husband, Merlin Dean Griesel.  Prior to the state court's ruling on Hamlin's motion for summary judgment, Griesel voluntarily dismissed her state court suit and filed the present diversity action in federal court.  The facts underlying this suit are set out below.[1]

On July 18, 1986, Mr. Griesel registered at a truck-stop motel in Conley, Georgia.  That evening, Mr. Griesel telephoned his wife at approximately 6:45 p.m., complaining of a pressure in his chest and a "funny feeling" in his left arm.  At approximately midnight, personnel at the motel responded to a call in Mr. Griesel's room.  Upon entering Mr. Griesel's room, the motel employees found him in distress because of chest pains and numbness in his arm.  Thereupon, the motel manager called the Emergency Medical Service of DeKalb County, Georgia.

At approximately 12:38 a.m., two DeKalb County advanced emergency medical technicians ("AEMT's"), W.D. Hodges and appellant Hamlin, arrived on the scene.  Hamlin is duly certified by the State of Georgia in the field of emergency medical services and has been actively employed in the field since 1977.  Hamlin and his fellow EMT took Mr. Griesel's pulse and blood pressure and performed a three-point contact electrocardiogram ("EKG") on him.  In addition, they asked Griesel several questions and filed a report, noting Mr. Griesel's history of diabetes.  After analyzing the results of the EKG, Hamlin and his fellow technician determined that Mr. Griesel had not suffered a heart attack but rather was experiencing the symptoms of angina or muscle strain.  *See* Soprano Aff. at ¶ 13.  Although Hamlin determined that

Mr. Griesel did not need to be immediately transported to the hospital, he advised Griesel to see a doctor.  The AEMT's then left Mr. Griesel in his room.  On the following afternoon, security personnel of the motel found Mr. Griesel dead in his room, the victim of an acute coronary event.

## III.  DECISION BELOW

The district court denied Hamlin's motion for summary judgment on the ground that Hamlin had exceeded his authority.  The court stated that Hamlin's attempt to diagnose Mr. Griesel's condition from the results of the EKG went beyond the bounds of his authority as an AEMT.  The court stated:

> Viewing all the evidence in a light most favorable to plaintiff, this court concludes that although Georgia law empowers AEMT's to exercise judgment in certain areas of emergency treatment, defendant's post-treatment attempt to diagnose conclusively Mr. Griesel's medical condition exceeded his statutorily authorized discretion.  The particular act for which recovery is sought—namely, defendant's attempt to diagnose Mr. Griesel's medical condition from the results of a diagnostic test—was not invested with such discretion as would compel the cloak of sovereign immunity.  Indeed, the defendant had no authority, statutory or otherwise, to exercise discretion on the basis of his interpretation of an EKG test result.

District Court Order at 7 (January 16, 1991).

## IV.  DISCUSSION

### A.  *Jurisdiction*

We must first address whether the district court's denial of Hamlin's motion for summary judgment on the ground that Hamlin is not entitled to sovereign immunity is an appealable order.  Ordinarily, this court has jurisdiction only over appeals

---

**1.** Because the posture of this case is a denial of a motion for summary judgment, the facts are taken from affidavits and documents submitted to the court in connection with Hamlin's motion for summary judgment.

from "final decisions" of the district courts. *See* 28 U.S.C. § 1291. However, a decision of a district court is appealable if it falls within "that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528 (1949).

In *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), the Supreme Court held that a denial of summary judgment is immediately appealable if the denial is based on the determination that a government official is not entitled to qualified immunity for alleged constitutional deprivations. *See also Nixon v. Fitzgerald*, 457 U.S. 731, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982) (denial of a claim for absolute immunity is immediately appealable). Because this is a diversity action, qualified immunity is not an issue in this case. Rather, the issue is whether the principles of *Mitchell v. Forsyth* extend to permit immediate appeal of a denial of summary judgment on the basis of lack of state sovereign immunity.

In *Napolitano v. Flynn*, 949 F.2d 617 (2nd Cir.1991), the Second Circuit stated that, in a diversity case, while the substantive law of the state governs the applicability of immunity to state law claims, "federal law determines the appealability of the district court's order" denying summary judgment. 949 F.2d at 621 (citing *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 199, 108 S.Ct. 1717, 1720, 100 L.Ed.2d 178 (1988)). The Second Circuit applied the *Cohen* factors[2] in determining whether an immediate appeal is available, determined that the state law immunity at issue there was an immunity from suit rather than a mere defense to liability, and thus, following *Mitchell v. Forsyth*, held that the denial of state law immunity was immediately appealable. We agree with the Second Circuit that the *Cohen* analysis, as applied in *Mitchell v. Forsyth*, provides the appropriate framework.

The immunity under Georgia law, which is at issue in this case, satisfies all of the *Cohen* factors for the same reasons that the Supreme Court in *Mitchell v. Forsyth* found that the *Cohen* factors were satisfied when summary judgment was denied to a government official asserting qualified immunity for alleged constitutional deprivations. In discussing the *Cohen* factor relating to whether the order is effectively unreviewable after trial, the Supreme Court emphasized that qualified immunity is an *"immunity from suit* rather than a mere defense to liability" and is "effectively lost if a case is erroneously permitted to go to trial." 472 U.S. at 526, 105 S.Ct. at 2815 (emphasis in original).

The crucial issue in our determination of whether Hamlin's claim of sovereign immunity is immediately appealable is whether the state sovereign immunity under Georgia law is an immunity from suit rather than simply a defense to substantive liability.[3] Under Georgia law, *"a suit cannot be maintained* against the State without its consent." *Crowder v. Department of State Parks*, 228 Ga. 436, 185 S.E.2d 908, 910 (1971) (emphasis added). *See also Sikes v. Candler County*, 247 Ga. 115, 274 S.E.2d 464, 466 (1981) (stating that immunity from suit is a basic attribute of sovereignty and that the State cannot be made amenable to suit without its consent). Therefore, it is clear that sovereign immunity under Georgia law is an immunity from suit.

---

**2.** In order to fall within the *Cohen* exception, an order must satisfy the following: "It must 'conclusively determine the disputed question,' 'resolve an important issue completely separate from the merits of the action,' and 'be effectively unreviewable on appeal from a final judgment.'" *Richardson–Merrell Inc. v. Koller*, 472 U.S. 424, 431, 105 S.Ct. 2757, 2761, 86 L.Ed.2d 340 (1985) (quoting *Coopers & Lybrand v. Live-*

*say*, 437 U.S. 463, 468, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978)).

**3.** The immunity under Georgia law is indistinguishable in other relevant respects from the immunity at issue in *Mitchell v. Forsyth* and its progeny. Thus, no discussion is necessary with respect to the other *Cohen* factors.

Because sovereign immunity under Georgia law is an immunity from suit, under the *Cohen* doctrine, we have jurisdiction over the district court's order denying summary judgment based on sovereign immunity under Georgia law. *See also Chrissy F. by Medley v. Mississippi Dept. of Public Welfare,* 925 F.2d 844, 848–49 (5th Cir.1991) (permitting immediate appeal of denial of Eleventh Amendment immunity); *Loya v. Texas Dept. of Corrections,* 878 F.2d 860 (5th Cir.1989) (same).

## B. Immunity

██ Turning to the merits of Hamlin's claims, we review *de novo* a district court's denial of summary judgment involving qualified immunity. *James v. City of Douglas, Ga.,* 941 F.2d 1539, 1542 (11th Cir.1991); *Rich v. Dollar,* 841 F.2d 1558 (11th Cir.1988). Because we conclude above that the state law sovereign immunity at issue in this case is akin to qualified immunity, we apply the *de novo* standard of review to the district court's denial of summary judgment. Summary judgment must be granted if there is "no genuine issue as to any material fact" and if the moving party demonstrates that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A court must consider all the evidence in the light most favorable to the nonmoving party. *Earley v. Champion Int'l Corp.,* 907 F.2d 1077, 1080 (11th Cir.1990). Applying these principles to this case, we conclude that Hamlin is entitled to summary judgment on the basis of state law sovereign immunity.

██ The seminal case in Georgia discussing state sovereign immunity is *Hennessey v. Webb,* 245 Ga. 329, 264 S.E.2d 878 (1980). As the court stated in *Hennessey:*

> [I]t is ... well established that "where an officer is invested with discretion and is empowered to exercise his judgment in matters brought before him, he is sometimes called a quasi-judicial officer, and when so acting he is usually given immunity from liability to persons who may be injured as the result of an erroneous decision; provided the acts complained of are done within the scope of the officer's authority, and *without wilfulness, malice, or corruption.*"

264 S.E.2d at 880 (emphasis in original). Thus, an officer will not be liable if his actions are within the scope of his authority and done without wilfulness. Because the district court in this case determined that Hamlin had exceeded his authority by attempting to diagnose Mr. Griesel's medical condition from the results of the EKG, we need to determine whether this action does exceed the authority of an AEMT. Specifically, on appeal, Griesel argues that Hamlin exceeded his authority in two ways: (1) by conducting and interpreting a three-point contact EKG on Mr. Griesel and (2) by rendering a medical diagnosis that Mr. Griesel was not having a heart attack but that he was merely suffering from angina or muscle strain. Appellee's Brief at 12.

In *Truelove v. Wilson,* 159 Ga.App. 906, 285 S.E.2d 556 (1981), the Georgia court addressed the issue of an officer exceeding his authority. Plaintiffs, parents of an elementary school student who was fatally injured when a soccer goal fell on her during physical education class, brought a wrongful death action against, *inter alia,* the school principal. The plaintiffs argued that the principal acted outside the scope of his authority in ordering and installing the soccer goal post without receiving prior approval from the school district. The trial court had denied the principal's motion for summary judgment on the ground that he was not entitled to sovereign immunity. The Georgia appellate court examined the evidence submitted by the parties in the motion for summary judgment and determined that the principal was acting within his authority because the soccer goal at issue in the case was obtained through community agencies rather than through school district channels and, therefore, was not subject to the requirement that prior approval was needed by the school district. Therefore, the appellate court concluded that the trial court erred in denying the principal's motion for summary judgment.

In the instant case, as in *Truelove,* the issue of whether the officer is entitled to sovereign immunity turns on the rules governing the officer's actions. Under O.C.G.A. § 31–11–53, a certified AEMT may "[r]ender first-aid and resuscitation

services as taught in the United States Department of Transportation basic training courses for emergency medical technicians." The United States Department of Transportation basic training course, in turn, shows that extensive training is conducted on the use and reading of an EKG. *See* Exhibit "A" attached to Defendant's Reply Brief in Support of Motion for Summary Judgment. Significantly, the United States Department of Transportation basic training course states that AEMT's are trained to "record and *interpret* EKG's." Exhibit "A" at 54 (emphasis added). In this case, Griesel does not dispute that Hamlin is a certified, AEMT. Nor does Griesel dispute that Hamlin was at the motel because he was responding to an official call. Finally, Griesel does not dispute that Hamlin was authorized to make the decision as to whether it was necessary or appropriate to transport Mr. Griesel to the hospital in the ambulance.

There is no genuine issue of fact with respect to the above-stated facts. Based on these undisputed facts, we conclude that Hamlin was acting within the scope of his authority. He had authority to administer and interpret the EKG. He had authority to make the determination as to whether Mr. Griesel's medical condition made it necessary or appropriate to transport him to the hospital in the ambulance. Having established that there was authority to interpret the EKG and to decide whether to transport the patient to the hospital, common sense indicates that Hamlin was also authorized to communicate to Mr. Griesel the substance of his interpretation and the reason for his decision not to transport. The challenged "diagnosis" constitutes nothing more. We conclude that Hamlin was acting within the scope of his authority and that the district court erred in holding otherwise.

The only other ground for avoiding immunity which is presented by Griesel is the assertion that Hamlin's actions were wilful. In this regard, we have carefully examined Griesel's brief on appeal and Griesel's briefs to the district court. The only fact asserted by Griesel to support the claim that Hamlin acted wilfully is the assertion that Hamlin knew the scope of his authority and intentionally acted outside of his authority. Because we have determined that Hamlin did not act beyond the scope of his authority, Griesel's claim of wilfulness necessarily fails.

Accordingly, the district court erred in failing to grant Hamlin's motion for summary judgment based upon sovereign immunity. The judgment of the district court is reversed, and the case is remanded with instructions to enter summary judgment in favor of Hamlin.[4]

REVERSED and REMANDED.

---

**4.** In light of our holding, we need not address the arguments of the parties relating to the statute of limitations.