PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

No. 97-6063

D.C. Docket No. 96-00041-CB-C

SULATA UMED SHETH,

Plaintiff-Appellee,

versus

JIMMIE WEBSTER, Officer,

Defendant-Appellant.

No. 97-6064

D.C. Docket No. 96-0041-CB-C

SULUTA UMED SHETH,

Plaintiff-Appellee,

versus

MICHAEL TYRONE WILLIAMS, Sergeant,

Defendant-Appellant.

Appeals from the United States District Court
for the Southern District of Alabama

**(April 2, 1998)**

Before TJOFLAT and BARKETT, Circuit Judges, and PROPST*, Senior District Judge.

*Honorable Robert B. Propst, Senior U.S. District Judge for the Northern District of Alabama, sitting by designation.

**AMENDED OPINION**

**PER CURIAM**:

Mobile Police Officer Jimmie Webster (Webster) and Mobile Police Sergeant Michael Tyrone Williams (Sergeant Williams) separately appeal from the rulings of the district court. The district court denied these defendants' motions for summary judgment based on assertions of discretionary function immunity from the state law torts of assault and battery, false arrest and malicious prosecution. The district court also denied Webster qualified immunity from some of the federal claims asserted against him. We affirm the denial of summary judgment on the federal and state law claims with respect to Officer Webster. We reverse the denial of summary judgment on the state law claims with respect to Sergeant Williams.

## I. FACTS[1]

Officer Webster originally arrived at the Beverly Motel, owned by plaintiff, at about 7:30 a.m. on October 28, 1994, to help settle a dispute between a disgruntled motel occupant, Avon Williams, and the motel manager, Kimberly Wetjen. Avon Williams was seeking a refund of a portion of the rent paid by his co-occupant of the room, Aquilla Thomas, and the manager had refused. Thomas had requested that the money not be refunded to Avon Williams. Webster suggested that the manager refund the rent, but told Avon Williams that, perhaps, the claim was a civil matter that he ought to pursue in court.

Ms. Sulata Umed Sheth, the owner of the motel, arrived at 10:00 a.m. Avon Williams

---

[1] The facts are considered most favorably to plaintiff. We also accept the district court's determination on the relevant facts. <u>McMillian v. Johnson</u>, 88 F.3d 1554, 1563 (11th Cir. 1996), <u>reh'g and reh'g en banc denied and modified</u>, 101 F.3d 1363 (11th Cir. 1996), <u>cert. denied sub nom</u>, <u>MacMillian v. Tate</u>, --- U.S. ---, 117 S. Ct. 2514 (1997).

approached Sheth and again requested that the motel refund the rent to him. Sheth refused, citing Thomas's instructions not to refund the rent to Avon Williams and the dishevelment of the room in which Avon Williams stayed. Officer Webster was once more dispatched to the scene. Avon Williams was loudly and combatively demanding that Ms. Sheth hand over <u>Aquilla Thomas's</u> money. Webster advised the plaintiff to refund the money. In reply, the plaintiff informed Webster that Thomas did not want the rent that she had paid to be refunded to Avon Williams and that Avon Williams had apparently damaged his room. Webster reiterated his belief that the matter was civil in nature and ought to be resolved in small claims court.

As the district court reported:

> Despite Officer Webster's statements concerning the nature of the dispute, Officer Webster argued with her [Sheth] concerning Williams' entitlement to the money. The plaintiff eventually offered to charge Williams for the day and refund the balance if Williams removed his belongings from the room. The plaintiff overheard Williams say that he intended to leave his stuff in the room, and the plaintiff told Williams that he could not leave his items in the room and have his money refunded. Officer Webster responded that, because he was being evicted, Williams need not remove his belongings from the room. The plaintiff told Officer Webster that she was not evicting Williams, but if Williams wanted a refund, then he must remove his belongings. The plaintiff further explained that she could not clean and relet the room with Williams' belongings in it.

Contradicted, Officer Webster stared at Sheth for a moment and then chided her that, being of Indian ethnicity, "[y]ou don't know our laws." The plaintiff verbally stood her ground, responding, "Police officers don't know all the laws, either, but I know some laws and my rights." At Sheth's reply, Officer Webster became enraged and violent. He shoved the plaintiff, who stumbled. He pushed again. The plaintiff cried to Webster that he was hurting her. He threw her back again. According to one witness, he kneed the plaintiff in the stomach. Sheth fell back against a Coke machine, five to twelve feet from where she stood.

Webster grabbed Sheth's arm and squeezed it. People around began to shout at Webster

3

to stop, that he was hurting her. At least one witness told Webster that the plaintiff was sick. He twisted her arm around her back and locked handcuffs on her left wrist. Webster then dragged the plaintiff by the arm to his car. She "begged Officer Webster not to arrest her and place her in the car." She told him that she was claustrophobic and taking medication for an illness. Apparently, this was of no avail, because, with the help of Sergeant Williams, a latecomer on the scene, the plaintiff was shoved in the rear of the car.

Several minutes later, the plaintiff sought to use the restroom. Webster and Sergeant Williams initially declined to let her.[2] After thirty minutes, the officers permitted the plaintiff to use the restroom, but did not remove the plaintiff's handcuffs. As a consequence, a maid at the plaintiff's motel accompanied the plaintiff to the bathroom to remove the plaintiff's garments and to otherwise aid her. Soon after the plaintiff's return from the restroom, she was taken to the Metro Police Station to be "fingerprinted, photographed, and booked." She was acquitted of all charges.

## II. PROCEDURAL BACKGROUND

A.     Plaintiff's Claims

Plaintiff filed her complaint in this action on December 22, 1995. She makes the following state law claims against both Webster and Sergeant Williams: assault and battery, false arrest, malicious prosecution and outrage. She also makes the following federal claims against both Webster and Sergeant Williams: excessive force and unlawful search and seizure in violation of the Fourth and Fourteenth Amendments, denial of due process in violation of the

---

[2] Officer Williams' refusal was apparently based on Webster's false report that plaintiff had earlier attempted to resist arrest.

4

Fifth and Fourteenth Amendments and denial of equal protection in violation of the Fourth (sic) and Fourteenth Amendments.[3]

B.      Defendants-Appellants' Motions For Summary Judgment and District Court Order

Each defendant-appellant filed a motion for summary judgment. The court will not repeat the well established standards applicable to the consideration of motions for summary judgment. The district court appropriately recited them. Our review is <u>de novo</u>. The district court granted both defendants-appellants' motions for summary judgment on the merits as to the plaintiff's claim of outrage. With regard to the plaintiff's claims of assault and battery, false arrest, and malicious prosecution, the district court considered the defendants-appellants' assertions of discretionary function immunity under state law. The district court concluded that a reasonable jury could find that both Webster and Sergeant Williams acted willfully, maliciously and in bad faith with regard to their treatment of plaintiff. The district court thus concluded that it was not necessary to attempt to precisely define the term "discretionary function" under state law because, in any event, Webster and Sergeant Williams had "forfeited" discretionary immunity because they had acted willfully, maliciously and in bad faith. The district court denied both the defendants-appellants' motions with regard to the claims of assault and battery, false arrest and malicious prosecution.

The district court granted both defendants-appellants' motions as to the federal claims of denial of due process and equal protection. The district court denied Webster's motion as to unlawful search and seizure and excessive force. The district court granted Sergeant Williams' motion as to unlawful search and seizure and excessive force based upon qualified immunity.

---

[3]Plaintiff also makes claims against the City of Mobile. No issues directly related to that party are before this court.

C. Issues On Appeal

Sergeant Williams appeals from the district court's denial of state law discretionary function immunity on the state law claims against him. Webster appeals from the district court's denial of qualified immunity as to federal law claims against him and from the district court's denial of discretionary function immunity as to the state law claims against him. The following issues are presented for appeal: (1) Does this court have jurisdiction to consider Webster's interlocutory appeal of denial of qualified immunity under federal law? (2) Is Webster entitled to such immunity? (3) Does this court have jurisdiction to consider an interlocutory appeal of a denial of discretionary function immunity under Alabama law? (4) Are Webster and Sergeant Williams entitled to such immunity?

### III.  COURT'S ANALYSIS

A.      Jurisdiction of Appeal

1.      Qualified Immunity

Since both the district court and the defendants rely on the facts as alleged by the plaintiff, there are, at this stage, no disputed facts. We thus conclude that we have jurisdiction to consider Webster's appeal of denial of qualified immunity with regard to the federal claims against him. Mitchell v. Forsyth, 472 U.S. 511 (1985). This is not a case such as is addressed in Johnson v. Jones, 515 U.S. 304 (1995) where the court "resolved a fact-related dispute." Id. at 307. In Johnson, the defendants contended that "we didn't do it." Id. at 308. The issues appealed here concern "not which facts the parties might be able to prove, but, rather, whether or not certain given facts showed a violation of 'clearly established' law. Id. at 311, citing Mitchell. "[A] qualified immunity ruling . . . is . . . a legal issue that can be decided with

6

reference only to undisputed facts and in isolation from the remaining issues of the case." Id. at 313, quoting Mitchell. "We review such orders de novo, and resolve all issues of material fact in favor of the plaintiff. . . . We then answer the legal question of whether the defendants are entitled to qualified immunity under that version of the facts." Thornton v. City of Macon, 1998 WL 9154 (11th Cir. Ga.) at 1. See also Foy v. Holston, 94 F.2d 1528 (11th Cir. 1996).

2.      Discretionary Function Immunity

The issue of whether interlocutory appeals can be taken from the denial of "discretionary function" immunity under Alabama law is one of first impression in this circuit. Alabama law recognizes at least two types of immunity from suit or liability for the individual executive acts of public officers. Not applicable here is the absolute "sovereign" immunity, except for injunctive relief, afforded to certain state constitutional officers, including sheriffs and deputy sheriffs. See Tinney v. Shores, 77 F.3d 378 (11th Cir. 1996). This constitutional officer sovereign immunity is pursuant to Article I, Section 14 of the Alabama Constitution of 1901. Alabama law also extends a form of immunity, not absolute, to state, as opposed to municipal and county, executive officers who do not hold constitutional offices. This form of immunity is described as "discretionary function" immunity. Taylor v. Shoemaker, 605 So. 2d 828 (Ala. 1992).

Apparently recognizing that certain state police officers are entitled to absolute immunity as constitutional officers and that other state police officers are entitled to discretionary function immunity, but that county and municipal police officers arguably had no immunity, the Alabama Legislature adopted § 6-5-338(a), Code of Alabama 1975. This provision became effective on April 26, 1994. Crouch v. Whatley, 900 F. Supp. 1567, 1572 (M.D. Ala. 1995). It provides as

7

follows:

> Every peace officer, except constables, who is employed or appointed pursuant to the Constitution or statutes of this state, whether appointed or employed as such peace officer by the state or a county or municipality thereof, or by an agency or institution, corporate or otherwise, created pursuant to the Constitution or laws of this state and authorized by the Constitution or laws to appoint or employ police officers or other peace officers, and whose duties prescribed by law, or by the lawful terms of their employment or appointment, include the enforcement of, or the investigation and reporting of violations of, the criminal laws of this state, and who is empowered by the laws of this state to execute warrants, to arrest and to take into custody persons who violate, or who are lawfully charged by warrant, indictment, or other lawful process, with violations of, the criminal laws of this state, shall at all times be deemed to be officers of this state, and as such shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties.

In initially determining whether this court has appellate jurisdiction over the denial of immunity from state law claims, we are guided by the approach and analysis used in Griesel v. B.D. Hamlin, 963 F.2d 338, 340 (11th Cir. 1992). According to Griesel, while state law governs the applicability of immunity to state law claims, "federal law determines the appealability of the district court's order denying summary judgment." Id. (citing Napolitano v. Flynn, 949 F.2d 617, 621 (2nd Cir. 1991). While this court normally only has jurisdiction over appeals from final decisions of the district courts, there are some decisions, not final on the merits, that must be heard by this court. The Supreme Court, in Cohen v. Beneficial Industrial Loan Corp., described "that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." 337 U.S. 541, 546, 69 S.Ct. 1221, 1225-26, 93 L.Ed. 1528 (1949). The Supreme Court has identified at least one type of case that fits this appealable class. In Mitchell v. Forsyth, supra, the Court held that a denial of summary judgment, based on the denial of

8

qualified immunity for alleged federal constitutional deprivations, is immediately appealable.

In Tinney v. Shores, this court concluded that, under Alabama law, a claim of state "sovereign" immunity (Article I Section 14) by state constitutional officers is an immunity from suit. 77 F.3d at 383. The court held, following the precedent set forth in Griesel, that a denial of summary judgment based on such immunity was properly before the court on interlocutory appeal. Id. The court relied, in part, on the language found in Section 14 of the Alabama Constitution. ("The State of Alabama shall never be made a defendant in any court of law or equity.") Constitutional officers of the state, such as sheriffs and deputies, are immune from suit under Section 14. See Drain v. Odom, 631 So.2d 971, 972 (Ala. 1994); Parker v. Amerson, 519 So.2d 442, 443 (Ala. 1987); Parker v. Williams, 862 F.2d 1471, 1475 (11th Cir. 1989). Since this is not a "sovereign" immunity case, Tinney is not directly applicable here.

Municipal peace officers performing discretionary functions, "shall at all times be deemed to be officers of this state, and as such shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties." § 6-5-338(a), Code of Alabama 1975. The Alabama legislature enveloped municipal peace officers under the same cloak of immunity as state troopers and other state police officials who are not constitutional officers. Griesel emphasizes that the "crucial issue . . . is whether the . . . immunity . . . is an immunity from suit rather than simply a defense to substantive liability." 963 F.2d at 340. In Taylor v. Shoemaker, involving state law claims against state officers, who were not constitutional officers, in their individual capacities, the court stated that "The specific issue presented in this case is whether [the defendants] are immune from suit because they were engaged in a discretionary function."

9

(emphasis added) 605 So. 2d at 830. The court considered "the 'threat of vexatious suit[s], with the attendant . . . possible need of testifying as to the basis on which the decision was made' . . . ." Id. at 832. The court further stated "to permit such suits as this would, without question, affect those officials in the exercise of their discretion." (emphasis added) Id. at 832. The court concluded, "Therefore, discretionary function immunity should be afforded to these defendants . . . ." Id. at 833. The court affirmed a summary judgment dismissal of the claims against the individual defendants. Id. See also Ex Parte City of B'ham, 624 So. 2d 1018 (Ala. 1993) and Marnon v. City of Dothan, 677 So. 2d 755 (Ala. 1995). In both of the latter cases, the court referred to "qualified or discretionary immunity" as if "qualified" and "discretionary function" immunity are one and the same ("Thus as a general rule, city officials are immune from suit unless they violate clearly established law"). Ex Parte City of B'ham at 1021 and Marnon at 761.[4] In Phillips v. Thomas, 555 So. 2d 81, 86 (Ala. 1989), the court stated:

> The summary judgment stage, then, becomes the step at which the court must determine whether the case should proceed forward, and at which the defendant must meet his burden of showing that the alleged negligence arose out of a discretionary or non-ministerial act, in order to avail himself of qualified immunity from suit (emphasis added).

Pursuant to § 6-5-338(a), Webster and Sergeant Williams, as municipal police officers, are entitled to the same discretionary function immunity as are state officers who are not constitutional officers.

We further note that the immunity afforded to Alabama municipal police officers is very similar, if not the same, as the immunity afforded the officials under Georgia law in Griesel.

---

[4]We recognize that these cases also refer to immunity from "tort liability" but we conclude that the Alabama Supreme Court intends the immunity to be immunity from suit, not merely a defense. The Supreme Court has referred to "shielding from liability" in discussing qualified immunity under federal law. See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) and Anderson v. Creighton, 438 U.S. 635, 638 (1987).

Both involve "authority", "discretion" and the absence of willful conduct. The Griesel court noted that the immunity at issue "is akin to qualified immunity." Id. at 341. We find no reasonable basis for allowing an interlocutory appeal in Griesel and denying it here.[5] We conclude that we have jurisdiction to review the denial of discretionary function immunity provided for under Alabama law.

B.      Entitlement to Immunity

1. Qualified Immunity

We affirm the denial of qualified immunity to Webster on plaintiff's false arrest and excessive force claims. The district court correctly concluded that the facts alleged by plaintiff, as they relate to Webster, established a violation of clearly established law. The facts are distinguishable from those in Gold v. City of Maimi, 121 F.3d 1442 (11th Cir. 1997), Jones v. City of Dothan, 121 F.3d 1456 (11th Cir. 1997), and Post v. Ft. Lauderdale, 7 F.3d 1552 (11th Cir. 1993). The facts are more akin to those in Ortega v. Schramm, 922 F.2d 684 (11th Cir. 1991), Williamson v. Mills, 65 F.3d 155 (11th Cir. 1995), and Thornton v. City of Macon, 132 F.3d 1395 (11th Cir. 1998). Viewing the facts in the light most favorable to plaintiff, Webster lacked even the arguable probable cause necessary to succeed on a qualified immunity defense. Madiwale v. Savaiko, 117 F.3d 1321, 1324 (11th Cir. 1997). We cannot conclude that a reasonable police officer could have believed that probable cause existed to arrest plaintiff.

---

[5]We note that both the district court and the appellate court in Griesel referred to the applicable immunity as "sovereign" immunity. We note that in Hennessy v. Webb, 245 Ga. 329, 332, 264 S.E. 2d 878, 881 (1980), the court referred to discretionary immunity as "governmental" immunity. In Hemak v. Houston County School District, 220 Ga. App. 110, 469 S.E. 2d 679, 681 (1996) discretionary immunity is distinguished from "sovereign or governmental immunity" and is called "official" immunity. In any event it involves, under Georgia law, "discretionary acts undertaken in the course of their duties and without willfulness, malice or corruption." Hemak at 681. There is no significant difference between the immunity involved in Griesel under Georgia law and discretionary function immunity under Alabama law.

11

When plaintiff objected to Webster's attempt to dictate the motel's refund policy and challenged his knowledge of the law, Webster became incensed and placed her under arrest. We reject Webster's claim that plaintiff unlawfully interfered with his duties and committed a crime by demanding that Williams vacate the premises if he wanted a refund.

The district court was likewise correct in holding that Webster was not entitled to qualified immunity on plaintiff's excessive force claim. Under plaintiff's allegations, Webster pushed her against a soda machine, handcuffed her, and dragged her to the police car. There is no evidence in the record to suggest that plaintiff posed a danger to the officer or others. Accordingly, because of the absence of any justification for Webster's use of force, application of the Fourth Amendment reasonableness standard "would inevitably lead every reasonable officer . . . to conclude that the force was unlawful." Post v. City of Fort Lauderdale, 7 F.3d 1552, 1559 (11th Cir. 1993). See also Thornton v. City of Macon, supra.

2.     Discretionary Function Immunity.

The court next determines whether the defendants were engaged in the performance of discretionary functions at the time the alleged torts occurred. If their acts were discretionary acts, the burden shifts to the plaintiff to demonstrate that the defendants acted in bad faith, with malice or willfulness in order to deny them immunity. "Acts of such nature are not considered by Alabama law to be discretionary. " Wright v. Wynn, 682 So.2d 1, 2 (Ala. 1996). Discretionary acts have been defined as "those acts as to which there is no hard and fast rule as to the course of conduct that one must or must not take and those acts requiring exercise in judgment and choice and involving what is just and proper under the circumstances." Id. at 2. See also L.S.B. v. Howard, 659 So.2d 43, 44 (Ala. 1995). The defendants' alleged acts and/or

12

omissions were discretionary. [6]

The evidence before the court does not support claims of willfulness, bad faith or malice on the part of Sergeant Williams, as it pertains to the specific claims of assault and battery, false arrest and malicious prosecution. Sergeant Williams did not make the decision to arrest the plaintiff. There is no evidence that he knew that the arrest was unlawful, or that he knew that the use of force in subduing and handcuffing the plaintiff was unreasonable, or that he had any hand in the prosecution of the plaintiff. Sergeant Williams merely assisted Officer Webster. The district court found that "Officer Webster told Sergeant Williams that the plaintiff was resisting arrest." The district court further found,

> While the court finds that Officer Webster's conduct violated clearly established law, the court cannot make the same determination with respect to Sergeant Williams. When Sergeant Williams arrived on the scene, Officer Webster had already determined, albeit erroneously, that probable cause existed to make an arrest and employed the aforementioned force against the plaintiff. Officer Webster and the plaintiff were standing beside officer Webster's police car, and when Sergeant Williams approached them, Officer Webster allegedly informed Sergeant Williams that the plaintiff was resisting arrest. At that point, Sergeant Williams assisted officer Webster in placing the remaining handcuff on the plaintiff and putting the plaintiff in the back of the police car. Sergeant Williams appears to have played little, if any, role in making the initial determination as to the existence of probable cause and the appropriate amount of force to use in arresting the plaintiff. Sergeant Williams assisted Officer Webster when Officer Webster allegedly claimed that plaintiff was resisting arrest. Based upon these facts and Sergeant Williams' more limited role in this incident, the court cannot conclude that Sergeant Williams violated clearly established law.

For the same reasons earlier discussed, we conclude that the holding in Johnson v. Jones, supra, does not defeat our jurisdiction of this state law appeal. Again, the district court's ruling was based upon facts which are not now disputed. Under both Alabama law and federal law, the core issue is whether a defendant violated clearly established law. See Ex Parte City of

---

[6] The district court found that the plaintiff conceded that the defendants acted within the scope of their discretionary authority.

13

Birmingham and Marnon, supra.  In any event, we can review the legal issue of whether a

defendant can lose his entitlement to discretionary function immunity for malice, willfulness or

bad faith which does not cause or lead to the alleged acts of assault and battery, false arrest and

malicious prosecution.  It is certainly not clear that Sergeant Williams should have known that

his actions violated the state laws he is accused of violating.  We have jurisdiction to address this

core issue.  See Dolihite v. Maughon, 74 F.3d 1027 (11th Cir. 1996) and Walker v. Schwalbe,

112 F.3d 1127 (11th Cir. 1997).[7]

We affirm the district court's denial of discretionary function immunity as to Webster.

There is an issue of fact as to whether he acted maliciously, willfully or in bad faith with regard

to the very acts leading to assault and battery, false arrest and malicious prosecution.  We reverse

the court's ruling denying discretionary function immunity to Sergeant Williams.  Cf. Gold v.

City of Miami, 121 F.3d 1442 (11th Cir. 1997) and Jones v. City of Dothan, Alabama, 121 F.3d

1456 (11th Cir. 1997).  The same facts which establish Sergeant Webster's entitlement to

qualified immunity establish that his acts were not willful, malicious or in bad faith.  The

Alabama Supreme Court has equated qualified immunity with discretionary function immunity.[8]


## IV. CONCLUSION

We AFFIRM the rulings of the district court as they relate to Webster. We REVERSE the

district court's denial of summary judgment as to Sergeant Williams.  We REMAND for further

---

[7]The Alabama law is certainly not clearly established that such conduct can result in liability for assault and battery, false arrest or malicious prosecution.  We have interlocutory jurisdiction where the denial of immunity is based even in part on a disputed issue of law.  Behrens v. Pelletier, __ U.S. __, 116 S.Ct. 834, 842 (1996).

[8]We do not suggest that entitlement to qualified immunity under federal law will always entitle a defendant to discretionary function immunity.  Qualified immunity under federal law would not necessarily be defeated by willfulness, malice or bad faith.

14

proceedings as to Webster and dismissal of the action, with prejudice, as to Sergeant Williams.