[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 23, 2001
THOMAS K. KAHN
CLERK

_____

No. 00-12827

_____

D. C. Docket No. 99-00110-CV-TMP-S

DEANGELA WILSON,

Plaintiff-Appellee,

versus

JAMES JONES, Sheriff of Shelby
County,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(May 23, 2001)**

Before BARKETT, HILL and KRAVITCH, Circuit Judges.

KRAVITCH, Circuit Judge:

In this appeal, we consider the constitutionality of a strip search performed on Plaintiff DeAngela Wilson, who was detained at the Shelby County Jail after being arrested for driving under the influence of alcohol. We agree with the district court's finding that the search, conducted without reasonable suspicion, violated Wilson's rights under the Fourth Amendment. Nevertheless, because we hold that Defendant Sheriff James Jones is entitled to qualified immunity, we reverse the district court's finding of liability under 42 U.S.C. § 1983.

## I. BACKGROUND

On May 1, 1998, deputy sheriffs of Shelby County, Alabama arrested Wilson at a license checkpoint for driving under the influence of alcohol. After her arrest, Wilson was taken to the Shelby County Jail, where, due to the level of alcohol in her blood, she was required to remain until the following morning. Because the Shelby County Jail does not have separate facilities to hold temporary female detainees, Wilson was placed in a cell within the general female population of the jail.

Before taking Wilson to her cell, a female corrections officer performed a strip search on Wilson pursuant to Policy Number B-103 of the Shelby County Jail, which requires each arrestee to undergo a "complete search" prior to

admission into the general population of the jail. The officer escorted Wilson to an unoccupied restroom in the jail and, after allowing her to use the restroom, instructed her to disrobe completely, face the wall, squat, spread her buttocks, and cough three times. The officer also checked Wilson's ears, mouth, nose and breasts during the search. She did not, however, do a visual or manual inspection of Wilson's body cavities below the waist.[1]

Subsequently, Wilson brought suit under 42 U.S.C. § 1983 against Sheriff Jones, asserting that he violated her Fourth Amendment rights by creating and implementing the policy under which she was searched.[2] The district court denied Sheriff Jones's motion to dismiss and his motion for summary judgment, finding (1) that the policy requiring a strip search of all arrestees admitted to the Shelby County Jail was unconstitutional; and (2) that Sheriff Jones was not entitled to qualified immunity. Sheriff Jones appeals the district court's denial of his motion for summary judgment.

## II. DISCUSSION

We review de novo the district court's order denying Sheriff Jones's motion

---

[1]The search was conducted in accordance with the policy promulgated by Sheriff Jones and no violations or departures from that policy are alleged.

[2]Wilson also sued Shelby County and an unknown Deputy Sheriff. The district court, however, dismissed Wilson's claims against those parties, as well as her claims against Sheriff Jones in his official capacity. The dismissal of those claims is not at issue in this appeal.

for summary judgment. See Sheth v. Webster, 145 F.3d 1231, 1235 (11th Cir. 1998). In reviewing the district court's denial of summary judgment, we "'must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation.'" McElligott v. Foley, 182 F.3d 1248, 1254 (11th Cir. 1999) (quoting Conn v. Gabbert, 526 U.S. 286, 290 (1999)).

A.  Constitutional Violation

We begin our discussion with the Supreme Court case of Bell v. Wolfish, 441 U.S. 520 (1978), which held that strip and visual body cavity searches may, in certain instances, be conducted on inmates with less than probable cause.  In Bell, the Court articulated the balancing test by which courts are to evaluate the reasonableness of a particular search:

> The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application.  In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails.  Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

Id. at 559. Balancing "the significant and legitimate security interests of the institution against the privacy interests of the inmates," the Bell Court upheld a

prison policy requiring inmates to submit to routine strip searches with visual body cavity inspections after each contact visit with a person from outside the institution. Id. at 560. Despite holding that particular policy constitutional, however, "Bell v. Wolfish [did] not validate a blanket policy of strip searching pre-trial detainees." Masters v. Crouch, 872 F.2d 1248, 1253 (6th Cir. 1989).

Rather, "[t]he Bell balancing test for reasonableness requires at a minimum, that the facts upon which an intrusion is based be capable of measurement against an objective standard . . . ." Justice v. City of Peachtree City, 961 F.2d 188, 192 (11th Cir. 1992) (citation and internal quotation marks omitted). Courts considering the issue "have applied 'objective standards' ranging from 'reasonable suspicion' to 'probable cause.'" Id. (citations omitted). This court recognizes that "reasonable suspicion" is sufficient to justify the strip search of a pretrial detainee. See Skurstenis v. Jones, 236 F.3d 678, 682 (11th Cir. 2000); see also Justice, 961 F.2d at 193 (holding that law enforcement officers "may conduct a strip search of a juvenile in custody, even for a minor offense, based upon reasonable suspicion to believe that the juvenile is concealing weapons or contraband").

In Skurstenis v. Jones, a case decided subsequent to the search of Wilson, we already addressed the reasonableness of the policy at the Shelby County Jail. See Skurstenis, 236 F.3d at 680-82. Relying on the balancing test articulated in

5

<u>Bell</u>, we determined that Policy Number B-103 violated the Fourth Amendment because it did not require reasonable suspicion as a predicate to strip searching newly admitted detainees.[3] <u>Id.</u> at 682 ("This policy, which does not require any reasonable suspicion, does not comport with the requirements of the Fourth Amendment.").[4] Nevertheless, we concluded that Plaintiff Skurstenis's Fourth Amendment rights were not violated by a search pursuant to that policy because officers had reasonable suspicion that she was concealing a weapon.[5] <u>Id.</u>

Here, unlike <u>Skurstenis</u>, there is no evidence that the officers at Shelby County Jail had reasonable suspicion that Wilson was concealing weapons or any other type of contraband. Indeed, as the district court noted, an officer permitted Wilson to use the bathroom prior to the search, which indicates a lack of fear that Wilson might flush any such substance down the toilet. Moreover, Sheriff Jones

---

[3]Like Wilson, the detainee searched in <u>Skurstenis</u> had been arrested for driving under the influence of alcohol and only remained in the jail overnight. <u>See</u> <u>Skurstenis</u>, 236 F.3d at 680.

[4]As noted by the district court in <u>Skurstenis</u>, there are important factual differences between <u>Bell</u> and <u>Skurstenis</u> which account, in part, for the courts' differing conclusions regarding the challenged policies. <u>See</u> <u>Skurstenis v. Jones</u>, F. Supp. 2d 1228, 1232 (N.D. Ala. 1999), <u>vacated by</u> 236 F.3d 678 (11th Cir. 2000). The main difference is that, unlike the inmate in <u>Bell</u>, "Skurstenis had no contact with anyone 'outside the institution' after she was arrested, something essential to the decision in <u>Bell</u> . . . . She was not out of law enforcement supervision from the first moment she was approached by the arresting officer, until her eventual release. She did not meet with any 'visitor,' nor did she have any opportunity to acquire or to hide a weapon or other contraband." <u>Id.</u> Thus, in <u>Skurstenis</u>, as in the present case, there did not exist the same threat to security that justified the routine search in <u>Bell</u>.

[5]The court concluded there was reasonable suspicion based on Skurstenis's possession of a .38 Special handgun at the time of her arrest.

6

testified that "I don't believe we had a reason to suspect that [Wilson] had any contraband."

Because Wilson was strip searched absent reasonable suspicion, we hold that the search of Wilson, as well as the jail's policy authorizing her search, violated the Fourth Amendment prohibition against unreasonable searches and seizures. Other circuits addressing this issue have held similar policies unconstitutional. See, e.g., Roberts v. Rhode Island, 239 F.3d 107 (1st Cir. 2001); Chapman v. Nichols, 989 F.2d 393 (10th Cir. 1993); Fuller v. M.G. Jewelry, 950 F.2d 1437 (9th Cir. 1991); Masters v. Crouch, 872 F.2d 1248 (6th Cir. 1989); Watt v. City of Richardson Police Dept., 849 F.2d 195 (5th Cir. 1988); Weber v. Dell, 804 F.2d 796 (2d Cir. 1986); Jones v. Edwards, 770 F.2d 739 (8th Cir. 1985); Mary Beth G. v. City of Chicago, 723 F.2d 1263 (7th Cir. 1983).

B. Qualified Immunity

Having established the existence of a constitutional violation, we turn to the issue whether or not Sheriff Jones is entitled to qualified immunity. "Qualified immunity shields a § 1983 defendant from liability for harms arising from discretionary acts, as long as the discretionary acts do not violate clearly established federal statutory or constitutional rights of which a reasonable person

would have known." Jackson v. Sauls, 206 F.3d 1156, 1164 (11th Cir. 2000).[6] In analyzing a qualified immunity defense, we are to consider only the "clearly established law and the information possessed by the official at the time the conduct occurred." Hope v. Pelzer, 240 F.3d 975, 981 (11th Cir. 2001) (citation and internal quotation marks omitted). "For qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances." Lassiter v. Ala. A & M Univ. Bd. of Trs., 28 F.3d 1146, 1150 (11th Cir. 1994). Upon review of the record, we cannot conclude that the preexisting case law "compels the conclusion" for every reasonable government official in Sheriff Jones's position that the policy at Shelby County Jail violates the Fourth Amendment.

At the time of Wilson's search, the only controlling cases in this jurisdiction involving strip searches of pretrial detainees were Bell v. Wolfish, 441 U.S. 520 (1979) and Justice v. City of Peachtree City, 961 F.2d 188 (11th Cir. 1992). As discussed below, neither of those cases clearly established a constitutional violation on facts "materially similar" to those in the present case. See Lassiter, 28

---

[6]It is undisputed that Sheriff Jones acted within the scope of his discretionary authority.

8

F.3d at 1150 ("When considering whether the law applicable to certain facts is clearly established, . . . [t]he facts need not be the same as the facts of the immediate case. But they do need to be materially similar.") (emphasis added) (citation omitted).

In Bell, as discussed supra, the Supreme Court upheld a federal prison's policy that required pretrial inmates "to expose their body cavities for visual inspection as a part of a strip search conducted after every contact visit with a person from outside the institution." Bell, 441 U.S. at 558. In justifying the policy based on security concerns, the Court emphasized that "[a] detention facility is a unique place fraught with serious security dangers. Smuggling of money, drugs, weapons, and other contraband is all too common an occurrence." Id. at 559. Given the language in Bell, it was not unreasonable for someone in Sheriff Jones's position to believe that blanket strip searches of newly admitted detainees were justified based on the serious risk that smuggled weapons and other contraband posed to the jail's security. The fact that the Bell Court upheld a search that was more intrusive than the one at issue here further weighs against a conclusion that Bell should have put Sheriff Jones on notice that his policy was unconstitutional.[7] See Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1185 (11th Cir. 1994)

---

[7]In contrast to the search in Bell, Wilson's lower body cavities were not inspected.

9

("To be 'clearly established,' the federal law by which the government official's conduct should be evaluated must be preexisting, obvious and mandatory so that a similarly situated, reasonable government agent would be on <u>notice</u> that his or her questioned conduct violates federal law under the circumstances.") (emphasis added) (citation omitted).

<u>Justice</u> involved a strip search of a fourteen year old plaintiff who was arrested for minor offenses. See <u>Justice</u>, 961 F.2d at 189-90. After the plaintiff was arrested, she was taken to a room in the police station and ordered to strip down to her panties even though her mother already had arrived to take her home. <u>Id.</u> at 190. Once the officers completed the search, they released the plaintiff into her mother's custody. <u>Id.</u> In concluding that the strip search was constitutional, we held that "law enforcement officers may conduct a strip search of a juvenile in custody, even for a minor offense, based upon reasonable suspicion to believe that the juvenile is concealing weapons or contraband." <u>Id.</u> at 193.[8]

Wilson contends that our decision in <u>Justice</u> gave Sheriff Jones fair warning that strip searching Wilson without reasonable suspicion violated the Fourth Amendment. See <u>McElligott v. Foley</u>, 182 F.3d 1248, 1260 (11th Cir. 1999)

---

[8]In <u>Justice</u>, we concluded that the "facts of this case gave the officers a 'reasonable suspicion,' and thus the search did not violate the Fourth Amendment." <u>Justice</u>, 961 F.2d at 194.

("Qualified immunity is a guarantee of fair warning."). Because we perceive a material difference between Justice and the case at hand, we disagree with Wilson's contention. In Justice, unlike the present case, the detainee was not going to be placed in a cell nor put in contact with the general inmate population. Rather, she was to be released to her parents after the search was completed. See Justice, 961 F.2d at 190. In contrast, Wilson was placed in a cell located within the female cell block, in the general population of the jail, where she was to remain until the following morning. Although Wilson was placed in a cell by herself, to reach her cell, she had to be escorted through an area housing several other female inmates. Furthermore, Wilson testified that during the night, inmates came up and talked to her through a window on her door which was used to pass through food trays. The detainee in Justice thus posed a lesser risk to the security of the jail than did Wilson, yet the search in Justice was upheld as constitutional. Accordingly, our decision in Justice does not clearly establish a constitutional violation on facts "materially similar" to those in the present case. See Lassiter, 28 F.3d at 1150.

Moreover, following Bell and Justice, but prior to the strip search of Wilson, a district court in the Northern District of Alabama specifically found that a strip search conducted pursuant to Sheriff Jones's policy at the Shelby County Jail did not violate the Fourth Amendment. See Mumpower v. Jones, No. 98-1097, slip op.

11

at 11 (N.D. Ala. Apr. 14, 1999). Likewise, a district court from the Middle District of Alabama held that a similar policy was justified based on security concerns. See Magill v. Lee County, 990 F. Supp. 1382, 1392 (M.D. Ala. 1998), aff'd 161 F.3d 22 (11th Cir. 1998).[9] Analyzing the precedent set forth in Bell and Justice, the court in Magill explained:

> If the Supreme Court can approve a strip search and body cavity search procedure on detainees who have had a contact visit with the public, . . . , surely this court must approve the present search. Likewise, if the Eleventh Circuit can approve strip-searches of juveniles who are not even going to be placed into a cell, this court should approve the present search.

Id. at 1392.

Inasmuch as two district judges had concluded that Sheriff Jones's policy and a similar policy were constitutional, it seems unreasonable to hold the sheriff liable for concluding the same. As this court previously has held, "[u]nless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit." Lassiter, 28 F.3d at 1149. In view of the case

---

[9]Unlike Wilson, the detainees in Magill were not required to remove their underwear as part of the search. Nevertheless, the court in Magill clarified that it was not "basing its opinion on the Sheriff's decision to allow the inmates to keep on their underwear. The constitutional balancing of the inmate's rights and jail's concerns does not necessarily turn on the issue of whether the inmates are allowed to wear a bra and panties." Magill, 990 F. Supp. at 1390.

12

law discussed above, we cannot say that "only a plainly incompetent officer or one who was knowingly violating the law," would have promulgated the policy at issue here.[10] See id.

Therefore, although we hold that the strip search of Wilson was unconstitutional, we conclude that Sheriff Jones is entitled to qualified immunity from liability under 42 U.S.C. § 1983. Accordingly, the district court's entry of summary judgment in favor of Wilson is

REVERSED.

---

[10]Wilson urges us to consider case law from other circuits in determining whether Sheriff Jones should have been on notice that his policy was unconstitutional. We decline to do so in light of the two district court opinions discussed above, which affirmatively upheld the policy at the Shelby County Jail and a policy similar to it. See Mumpower, No. 98-1097, slip op. at 11; Magill, 990 F. Supp. at 1392.