[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 24-10511

Non-Argument Calendar

_____

BENNIE MAE SNEAD,
deceased
CURTIS MINCEY,

                                                        Plaintiff-Appellee,

*versus*

GEORGIA DEPARTMENT OF CORRECTIONS,
WARDEN DESHAWN JONES,

                                                        Defendants-Appellants,


DOE JOHN AND JANE ,
Correctional Officers 1-10, individually
and in their official capacities as

correctional officers,

Defendants.

_____

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 4:23-cv-00153-CDL

_____

Before WILSON, BRANCH, and LUCK, Circuit Judges.

PER CURIAM:

The Georgia Department of Corrections ("GDOC") and former Rutledge State Prison Warden Deshawn Jones appeal the district court's order denying their motion for judgment on the pleadings based on qualified and sovereign immunity under Georgia law. They argue that the district court erred in allowing the case to proceed to discovery and deferring a decision on their immunity defenses. After review, we agree that the district court erred. Accordingly, we vacate the decision and remand the case for the district court to address the immunity defenses in the first instance.

## I.    Background

Bennie Mae Snead's brother, Curtis Mincey, was an inmate at Rutledge State Prison in Georgia when he died in July 2021.

Following his death, Snead filed a wrongful death complaint in Georgia Superior Court against the GDOC, Deshawn Jones who was the warden of Rutledge, and unnamed corrections officers John and Jane Does #1-10. According to the complaint, in "early July" 2021, an anonymous inmate contacted Snead and told her that he had not seen Mincey for several days. In response, Snead made several attempts to reach her brother by calling the prison and speaking with a corrections officer and her brother's counselor. Snead expressed concerns for her brother's safety and welfare, but her requests to speak to her brother were denied and no one checked on his welfare. Subsequently, on July 22, 2021, she received a phone call that Mincey had died. The caller told her that Warden Jones would be in contact with more information. However, according to Snead, Warden Jones "has failed or refused to speak" with her concerning her brother's death. An autopsy by the Georgia Bureau of Investigation determined that Mincey's death was the result of a homicide with "Blunt Force Trauma of the Head, Neck[,] Torso and Extremities."

In the complaint, Snead maintained that her brother "was suffering from schizophrenia and or some other form of mental illness" and "requested medical and psychological assistance," but that unnamed correctional officers and staff refused to provide assistance and instead "intimidated [Mincey], used unnecessary force, brutalized and battered him, resulting in catastrophic injury

and death." Snead also alleged that she sent ante litem notice to the defendants but that the defendants refused to respond.

Based on the above allegations, Snead asserted claims for violations of Mincey's civil rights under 42 U.S.C. § 1983, including claims for excessive force, cruel and unusual punishment, deliberate indifference to a serious risk of harm, deliberate indifference to Mincey's medial needs; municipal liability; "Canton Liability"; violations of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act; and myriad claims under Georgia state law. Snead sought compensatory, special, and punitive damages, as well as attorney's fees.

GDOC and Warden Jones removed the case to federal court based on federal question jurisdiction and moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). They asserted that Snead's complaint "[was] nothing more than an alleged wrong in search of a claim and a defendant," and that her claims were barred by the Eleventh Amendment, qualified immunity, as well as sovereign immunity under Georgia law, and otherwise failed to state a viable claim for relief under federal or state law.

In response, Snead argued that because her brother's death was the result of "foul play," his constitutional rights were necessarily violated, such that "at the very least, [she] should be provided the opportunity to conduct discovery." She asserted that she had pleaded her case as best as she could given that she "was not present [when her brother was killed]; her brother [was] dead

and [could not] tell her what happened; and the Defendants have no incentive to reveal what actually happened."

Upon review, the district court granted the motion in part and denied it in part.  The district court granted the motion in part as to the § 1983 claims against GDOC and the Warden in his official capacity, and the individual capacity claims against the Warden under the ADA and the Rehabilitation Act.  Thus, all that remained were the individual capacity claim against the Warden under § 1983, the claims against GDOC under the ADA and the Rehabilitation Act, and the state law claims.  With regard to those remaining claims, the district court acknowledged that Snead "did not allege with specificity the circumstances surrounding her brother's beating or how he was discriminated against because of a disability."  Furthermore, the district court noted that all of Snead's allegations were "purely conclusory because [Snead] [could not], without some discovery, identify any officers who participated in Mincey's beating, disregarded a substantial risk of harm to Mincey, or intentionally discriminated against Mincey because of a disability."  Yet, despite the conclusory nature of the complaint, the district court denied the defendants' motion for judgment on the pleadings, explaining that Snead could not "make specific allegations unless she had an opportunity to learn what happened."  Accordingly, the court deferred ruling on the immunity defenses, and instructed the defendants to renew those

6                    Opinion of the Court                    24-10511

defenses after discovery at the summary judgment stage. The defendants appealed.

## II.    Discussion

The defendants argue that the district court erred in deferring ruling on their qualified immunity and sovereign immunity arguments and instead allowing the case to proceed to discovery notwithstanding the conclusory nature of the complaint. Snead in turn argues that we lack jurisdiction because the district court merely deferred ruling on the immunity motions, which is not a final decision subject to appeal and, alternatively, that the district court did not err in deferring ruling on the immunity defenses because Snead cannot properly plead her claims unless she has an opportunity to conduct discovery. We first address the jurisdictional argument and, because we conclude that we have jurisdiction, we then turn to the defendants' argument on appeal.

### A.  Jurisdiction

Snead maintains that we lack jurisdiction over this appeal because the district court merely deferred ruling on the immunity defenses, and, therefore, the judgment in question is not a final decision. The defendants argue that we have jurisdiction over this appeal pursuant to the collateral order doctrine.

We review our appellate jurisdiction *de novo*. *Positano Place at Naples I Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, 84 F.4th 1241, 1247 (11th Cir. 2023). We have appellate jurisdiction over final decisions of the district courts. *See* 28 U.S.C. § 1291. Additionally, the collateral order doctrine "allows for immediate appeals of a

small class of non-final orders." *SmileDirectClub, LLC v. Battle*, 4 F.4th 1274, 1277 (11th Cir. 2021) (en banc) (quotations omitted). Orders that deny qualified immunity and state sovereign immunity fall within that category of immediately appealable orders under the collateral order doctrine. *Ashcroft v. Iqbal*, 556 U.S. 662, 671–72 (2009) (explaining that an order denying an officer's claim of qualified immunity is immediately appealable "despite the absence of a final judgment" (quotations omitted)); *Griesel v. Hamlin*, 963 F.2d 338, 340–41 (11th Cir. 1992) (holding that "sovereign immunity under Georgia law is an immunity from suit," and, therefore, an order denying such immunity is "immediately appealable").

Snead does not dispute that we have jurisdiction over orders that deny qualified immunity or sovereign immunity under Georgia law, but she argues that this appeal is different because the district court did not actually deny the defendants' qualified immunity or state sovereign immunity. Instead, it deferred ruling on the immunity defenses until after discovery, instructing the defendants to renew their motions at the summary judgment stage. We have held, however, that an order deferring ruling on a defendant's immunity defense is equivalent to "effectively den[ying] immunity, which provides an entitlement not to stand trial or face the other burdens of litigation." *Howe v. City of Enter.*, 861 F.3d 1300, 1302 (11th Cir. 2017) (quotations omitted) (collecting cases and deciding that the district court's order deferring ruling on defendants' immunity defense was immediately appealable). Accordingly, we have jurisdiction over this appeal under the collateral order doctrine. *Id.*

> B.  *Whether the district court erred in deferring ruling on the immunity defenses*

The defendants argue that the district court erred in deferring ruling on their defenses of qualified immunity and state sovereign immunity and permitting discovery to proceed because those immunities are defenses from suit, not just liability. Therefore, by deferring ruling on those matters, the district court is depriving them of their right to be free from suit and subjecting them to the unnecessary burdens of litigation.

We review a district court's decision on a motion for judgment on the pleadings *de novo*. *Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001). "Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Id*. "In determining whether a party is entitled to judgment on the pleadings, we accept as true all material facts alleged in the non-moving party's pleading, and we view those facts in the light most favorable to the non-moving party." *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014). "The standards for reviewing decisions on motions to dismiss and motions for judgment on the pleadings are the same: whether the count stated a claim for relief." *Sun Life Assurance Co. of Can. v. Imperial Premium Fin., LLC*, 904 F.3d 1197, 1207 (11th Cir. 2018) (quotations omitted). A complaint need not contain detailed factual allegations, but must provide sufficient allegations that, when taken as true, "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A complaint is subject to dismissal . . . when its allegations,

24-10511                Opinion of the Court                    9

on their face, show that an affirmative defense bars recovery on the claim." *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003).

It is well-settled that qualified and sovereign immunity are affirmative defenses from litigation itself, not merely liability. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (qualified immunity); *Griesel*, 963 F.2d at 341 (sovereign immunity under Georgia law). Because these defenses provide immunity from suit, courts must "resolv[e] immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). "Until this threshold immunity question is resolved, discovery should not be allowed," *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), "cabined or otherwise," *Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009).

Snead insists that the district court properly deferred ruling on the immunity defenses because "[d]iscovery is required for [her] to get additional facts about the cause of Mincey's death and the identity of those involved" to support her claims. But as the Supreme Court has cautioned, the basic thrust of these immunity doctrines "is to free officials from the concerns of litigation, including avoidance of disruptive discovery." *Iqbal*, 556 U.S. at 685 (quotations omitted). And "the doors of discovery" do not unlock "for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79; *Chudasama v. Mazada Motor Corp.*, 123 F.3d 1353, 1366 (11th Cir. 1997) ("[Discovery] is not a device to enable a plaintiff to make a case when his complaint has failed to state a claim." (quotation omitted)). Accordingly, the district court erred in deferring ruling on the defendants' qualified immunity and

sovereign immunity under Georgia law defenses. Consequently, we vacate the district court's order and remand for the court to decide the defendants' immunity issues in the first instance.

**VACATED AND REMANDED.**