Rachel Dianne HARRIS, Plaintiff,

v.

**PALM HARBOR HOMES, INC., Defendant.**

Civil Action No. 01–M–1417–E.

United States District Court,
M.D. Alabama,
Eastern Division.

April 23, 2002.

Michael Stephen Harper, Harper & Smith, P.C., Tallassee, AL, for plaintiff.

Michael L. White, Winston Whitehead Edwards, Bush, Craddock & Reneker, L.L.P., Montgomery, AL, for defendant.

## ORDER

McPHERSON, United States Magistrate Judge.

On 12 February 2002, the defendant Palm Harbor Homes, Inc. ["Palm Harbor"] filed a Motion to Dismiss [1], or in the Alternative, Motion to Compel Binding Arbitration and Motion to Stay [2] (Doc. # 6), seeking the arbitration of all claims asserted by plaintiff Rachel Dianne Harris ["Harris"]. Harris filed an objection and a brief in opposition to Palm Harbor's motion on 15 March 2002 (Docs.# 14, 15). On 29 March 2002, Palm Harbor filed its reply to Harris' response (Doc. # 21), and on 16 April 2002, Harris filed a supplemental response [3] (Doc. # 25).

After careful consideration of the arguments of counsel, the relevant law, and the

---

1. The motion to dismiss was denied as moot on 15 February 2002 (Doc. # 9).

2. The motion to stay was granted on 15 February 2002 (Doc. # 10).

3. Counsel for the plaintiff represented on 17 April 2002 that the supplemental response (Doc. # 25) supersedes the previously filed objection (Doc. # 15) and brief in opposition (Doc. # 14). Accordingly, the court addresses only the plaintiff's opposition to the motion to compel arbitration as asserted in the supplemental response (Doc. # 25).

record as a whole, the court finds that the defendant's Motion to Compel Arbitration should be GRANTED.

## I. FACTS AND PROCEDURAL HISTORY[4]

The disputes in this case arise from Harris' purchase of a mobile home from Palm Harbor (Doc. # 1). Harris entered into a sales contract with Palm Harbor on 27 January 2001. The sales contract included a separate arbitration agreement which was signed by Harris and Palm Harbor on 7 February 2001 (Doc. # 20, Ex. A1).[5] The arbitration agreement, which is entitled "ARBITRATION PROVISION *For Alabama*" in bold letters, states in relevant part:

> The parties to the [sales contract] agree that any and all controversies or claims arising out of, or in any way relating to, the [sales contract] or the negotiation, purchase, financing, installation ... or sale/disposition of the home which is the subject of the [sales contract], whether those claims arise from or concern contract, warranty, statutory, property or common law, will be settled solely by means of final and binding arbitration before a three-judge panel of the American Arbitration Association (AAA) in accordance with the rules and procedures of the AAA. Judgment on the arbitration

award may be entered in any court having jurisdiction.

(Doc. # 20, Ex. B1).

Four paragraphs below this section, the agreement states:

> The parties understand that they have the right to have any disputes between them decided in court, but they choose instead to have any such disputes decided by arbitration.
> THE PARTIES KNOWINGLY AND VOLUNTARILY WAIVE ANY RIGHT THEY HAVE TO A JURY TRIAL.

(Doc. # 20, Ex. B1). Harris signed at the bottom of this page, thereby agreeing to the arbitration provision (*Id.*).

■ On 4 December 2001, Harris brought this action against Palm Harbor and fictitious defendants "A", "B", "C", "X", "Y" and "Z"[6] alleging state law claims of fraud, suppression of a material fact, deceit, fraudulent deceit, negligence, wantonness, and breach of contract (Doc. # 1). Harris filed her First Amended Complaint on 18 March 2002, amending her breach of contract claim (Doc. # 17).[7] Jurisdiction is proper pursuant to 28 U.S.C. § 1332.[8]

Harris alleges that "in the course of negotiations for the purchase and sale of the mobile home, [Palm Harbor] made cer-

---

4. The statement of facts is based upon the evidence submitted by both parties.

5. The sales contract states in uppercase letters, in relevant part,
 NOTE: SEE THE 'ARBITRATION PROVISION AND AGREEMENT WHICH IS PART OF THIS TRANSACTION.'
 (Doc. # 20, Ex. A1).

6. The court will not address plaintiff's claims against "A", "B", "C", "X", "Y", and "Z" because fictitious party practice is not authorized by either the Federal Rules of Civil Procedure or any federal statute. *See New v. Sports & Recreation, Inc.,* 114 F.3d 1092, 1094 n. 1 (11th Cir.1997).

7. On 28 March 2002, Palm Harbor filed a notice with the Court indicating its intent that its motion to compel arbitration, filed on 12 February 2002 (Doc. # 6), be considered as to all counts of Harris' complaint, as amended on 18 March 2002 (Doc. # 18). Accordingly, the court considers the defendant's motion in view of the plaintiff's complaint, as amended.

8. Harris is a citizen of Alabama and Palm Harbor is a corporation incorporated under the laws of Florida, with its principal place of business in Florida (Doc. # 1, ¶s 1, 2). Damages of more than $75,000 have been alleged.

tain representations to [her] in order to induce her to purchase the new mobile home" (Doc. # 1, ¶ 8). Harris further alleges that Palm Harbor made these representations, which concerned the new mobile home and the current mobile home she owned ["used mobile home"], with knowledge that she "could not afford to purchase and pay for both the mobile home that she already owned as well as the new mobile home being purchased" (*Id.*). After purchasing the new mobile home, Harris discovered that Palm Harbor's representations were false (Doc. # 1, ¶ 10). Harris seeks to resolve all disputes growing from Palm Harbor's representations through litigation in this court.

## II. STANDARD OF REVIEW

Pursuant to the Federal Arbitration Act ["FAA"], a written arbitration "provision in any ... contract evidencing a transaction involving commerce..[is] valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C.A. § 2 (1991).[9] The effect of Section 2 is "to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Section 3 provides for the stay of proceedings in federal district courts when an issue in the proceedings is referable to arbitration. *See* 9 U.S.C. § 3. Section 4 provides for orders compelling arbitration when one party has failed, neglected, or refused to comply with an arbitration agreement. *See* 9 U.S.C. § 4.

 The FAA establishes " 'a federal policy favoring arbitration.' " *Shear-*

son/American Exp., Inc. v. McMahon, 482 U.S. 220, 226, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) (quoting *Moses H. Cone Memorial Hosp.,* 460 U.S. at 24, 103 S.Ct. 927 (1983)). Indeed, under the FAA, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Memorial Hospital,* 460 U.S. at 24–25, 103 S.Ct. 927. Therefore, courts must rigorously enforce agreements to arbitrate. *See Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). In doing so, the parties' intent determines the claims that are arbitrable, and the court looks to the wording of the arbitration clause and gives all provisions of the contract their full effect. *See Bullock v. United Benefit Life Ins. Co.,* 2001 WL 987955 (M.D.Ala.2001).

## III. DISCUSSION

This case requires the court to apply basic principles of contract interpretation in harmony with the general federal policy in favor of arbitration. The FAA creates a presumption in favor of arbitration; so parties must clearly express their intent to exclude categories of claims from their arbitration agreement. *See First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 945, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995) (issues will be deemed arbitrable unless it is clear that the arbitration clause has not included them). Notwithstanding that presumption, however, "the courts are not to twist the language of the contract to achieve a result which is favored by federal policy but contrary to the intent of the parties." *Goldberg v. Bear, Stearns & Co.,* 912 F.2d 1418, 1419–20 (11th Cir.1990).

---

**9.** For that reason, Alabama law, as it applies generally to all contracts, may be applied to test the validity, revocability, and enforceability of this particular arbitration agreement under the FAA. *See Perry v. Thomas,* 482 U.S. 483, 492 n. 9, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987); *also Young v. Jim Walter Homes, Inc.,* 110 F.Supp.2d 1344, 1346 (M.D.Ala.2000).

The resolution of this case appears to turn on the interpretation of the language *"any and all* controversies or claims *arising out of,* or in *any way relating* to the [sales contract] or the negotiation, purchase, financing ... or sale/disposition of the home which is the subject of the [sales contract] ..." The Supreme Court has stated that courts must construe arbitration agreements broadly, resolving all doubts in favor of arbitration. *Moses H. Cone Mem'l Hosp.,* 460 U.S. at 24–25, 103 S.Ct. 927. *See also United Steelworkers of Am. v. Warrior and Gulf Navigation Co.,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960) ("An order to arbitrate ... should not be denied unless it may be said with positive assurance that the arbitration agreement is not susceptible of an interpretation that covers the asserted dispute.").

Palm Harbor, therefore, urges the court to construe this language simply as it is written and asserts that Harris' claims "clearly relate to and arise out of the sales contract" (Doc. # 21, p. 3). Palm Harbor acknowledges that the complaint refers to a second mobile home *not* mentioned in the sales contract, but argues in any case that "any dealings between Plaintiff and Defendant relating to the sale of the second home, 'relate' or 'arise' as a result of the sales contract to purchase the new home" (*Id.*). Palm Harbor concludes that the "arbitration provision clearly encompasses all claims made by Harris" (Doc. # 6).

In response, Harris urges the court to construe this language narrowly and thereby submits that the arbitration agreement clearly "limits the scope of the agreement to claims or disputes between [her and Palm Harbor] which arise from the home which is the subject of the [sales contract]" (Doc. # 25). Harris asserts that the only mobile home mentioned in the sales contract is the new mobile home she purchased and therefore argues that only claims relating to the new mobile fall within the scope of the arbitration agreement (*Id.*). As a result, Harris concludes that since the used mobile home was not mentioned in the sales contract, any dispute or claim regarding that home "does not come within the purview of the arbitration agreement" (*Id.*). The court finds that Harris' arguments are not persuasive.

Arbitration is a matter of consent, not coercion, and parties are generally free to structure their agreements as they see fit. *Roberson v. Money Tree of Ala., Inc.,* 954 F.Supp. 1519, 1527–1528 (M.D.Ala.1997). While any and all ambiguities in the contract must be resolved in favor of arbitration, the court cannot twist the language beyond its plain meaning. *See Blue Gray Corp. v. Merrill Lynch, Pierce, Fenner & Smith Inc.,* 921 F.2d 267, 271 (11th Cir. 1991).

The subject agreement states that the parties will arbitrate *"any and all* controversies or claims *arising out of,* or in *any way relating* to the [sales contract] or the *negotiation, purchase, financing* ... or sale/disposition of the home which is the subject of the [sales contract] ..." (Doc. # 20, Ex. B1). The Supreme Court of Alabama has held that the phrase "any controversy or claim arising out of or relating to" in arbitration agreements covers a broad range of disputes and includes more than those disputes relating to the interpretation and performance of the contract itself. *Ex parte Crisona,* 743 So.2d 452, 456 (Ala.1999) (breach of contract claims within scope of arbitration clause of employment agreement); *Beaver Constr. Co. v. Lakehouse, L.L.C.,* 742 So.2d 159, 165 (Ala.1999) (tort claims within scope of the arbitration clause in contract); *Reynolds & Reynolds Co. v. King Auto., Inc.,* 689 So.2d 1, 2–3 (Ala.1996) (breach of contract, negligence and fraud claims within

scope of arbitration clause in agreement). A review of the complaint supports the conclusion that this phrase in the parties' arbitration agreement covers the all of the disputes in this case, including those that focus upon the used mobile home.

Harris alleges in her complaint that "in the course of **negotiations** for the purchase and sale of the mobile home, [Palm Harbor] made certain representations to [her] in order to induce her to purchase the new mobile home" (Doc. # 1, ¶ 8) (emphasis added). This allegation indicates that Harris' claims **arise** from conduct and representations that allegedly occurred in the **negotiations** for the purchase of the new mobile home. Moreover, she alleges that Palm Harbor misrepresented to her that "the $1,600.00 balance down payment shown on the contract for the **purchase** of the new mobile home would be returned to [Harris] by a rebate" (Doc. # 1, ¶ 8i). This allegation indicates that her claims **relate to** representations by Palm Harbor regarding the **purchase and financing** of the new mobile home. Accordingly, in view of the allegations in the complaint alone, the court finds that the arbitration agreement addresses Harris' claims. *See Vann v. First Cmty. Credit Corp.*, 2002 WL 366511 (Ala.2002) (arbitration agreement between vehicle buyers and lender included buyers' claims of fraudulent misrepresentation where agreement stated that parties would arbitrate any claim "in any way arising out of relating to this Agreement or any agreements or instruments relating to this Agreement."). Consequently, this court is forced to conclude that Harris' claims fall squarely within the scope of the arbitration agreement, and are therefore arbitrable.

Harris would have the court craft a legal distinction based solely on the fact that one commodity, the new mobile home, is specifically referred to in the arbitration agreement, while another, the used mobile home, is not. It is the *operational effect* of the agreement, rather than its *subjective elements*, that is controlling in the determination of the scope of the agreement. Thus, although the used mobile home is not mentioned in the agreement, paragraph eight of the complaint establishes with certainty that its disposition was critical to the existence of the contract between the plaintiff and the defendant, and representations made about it formed the life blood of the financing of the new purchase. Under those circumstances, the future of the used mobile home can hardly be said to have been a tangential issue. It follows that any dispute arising from representations about the used mobile home also arise from the sales contract.

The court has considered Harris' arguments in opposition to arbitration and finds them to be unpersuasive in this case. There may well be cases in which the subject matter of the parties' dispute is beyond the sales agreement which includes an arbitration agreement. That is not the case here. Because the arbitration agreement meets the requirements of 9 U.S.C. § 2, the court finds that it is enforceable. Therefore, Harris' claims in her Complaint must be resolved via arbitration. *See* 9 U.S.C. § 4. As provided in 9 U.S.C. § 3, the court will stay these proceedings pending the outcome of arbitration.

## IV. CONCLUSION

Accordingly, without ruling on the merits of the plaintiff's claims, it is hereby ORDERED that:

1. The Motion to Compel Arbitration (Doc. # 6) filed by the defendant be GRANTED;

2. Pursuant to 9 U.S.C. § 4, all parties to this litigation shall proceed with arbitration on the plaintiff's claims in the manner provided for in the Arbitration Provision; and

3. Pursuant to 9 U.S.C. § 3, this action be and the same is hereby STAYED pending arbitration.

It is further ORDERED:

4. That the Clerk of the Court REMOVE this action from the court's active docket and PLACE said action on the court's administrative docket, with leave for either party to move to reinstate the action on the court's active docket at the conclusion of the arbitration proceedings;

5. That such reinstatement will cause the filing date of the action to relate back to the original filing date of this action; and

6. That any motion for reinstatement shall be filed no later than the time prescribed in 9 U.S.C. § 12.