**Philip Dale THOMAS, Jr., Plaintiff,**

v.

**CITY OF CLANTON, et al., Defendants.**

**No. CIV.A.02–T–621–N.**

United States District Court, M.D. Alabama, Northern Division.

Sept. 23, 2003.

---

**139.** *See* AR, Vol. 1 at 000074.

**140.** Plaintiff's Brief at 49 (emphasis added).

**141.** *See* AR, Vol. 1 at 000073.

## OPINION

MYRON L. THOMPSON, District Judge.

Plaintiff Philip Dale Thomas, Jr., brings this lawsuit against defendants City of Clanton, Alabama, Chief of Police James Henderson, and former Police Officer Scott Williams, alleging violations of his

fourth-amendment right to be free from unreasonable searches and seizures, and his fourteenth-amendment right to bodily integrity. Thomas seeks enforcement of these rights pursuant to 42 U.S.C.A. § 1983.[1] Jurisdiction is proper under 28 U.S.C.A. § 1343(a)(4) (civil rights). This cause is now before the court on the city and Chief Henderson's motion for summary judgment.

## I. STANDARD FOR MOTION FOR SUMMARY JUDGMENT

The City of Clanton and Chief Henderson move for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. Rule 56(c) provides that summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Once the party seeking summary judgment has informed the court of the basis for its motion, the burden shifts to the non-moving party to demonstrate why summary judgment would be inappropriate. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *see also Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115–17 (11th Cir.1993) (discussing how the responsibilities on the movant and the nonmovant vary depending on whether the legal issues, as to which the facts in question pertain, are ones on which the movant or nonmovant bears the burden of proof at trial). In making its determination, the court must view all evidence and any factual inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S.

574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## II. FACTUAL BACKGROUND

The facts, taken in the light most favorable to Thomas, are as follows. On June 16, 2001, Thomas, who was 17 years old at the time, was a passenger in a car driven by J.D. Owens. The car was stopped by Clanton police officers and, upon being asked for identification, Owens fled. The police officers searched the car and found a bag of marijuana under the driver's seat. Owens's wife stated that the marijuana belonged to Owens, and not to Thomas.

Clanton Police Officer Williams arrived at the scene after the vehicle was stopped and volunteered to take Thomas to the police station, to which Thomas was then transported in handcuffs.

While at the station, without arresting, fingerprinting, or otherwise processing Thomas, Williams began questioning him about Owens. During the interview, Williams took Thomas to the men's bathroom and strip searched him. He ordered Thomas to take off all his clothes, bend over, and grab his ankles.

After the interview, under the pretense of looking for Owens, Williams took Thomas to Thomas's parents' home, where Thomas resides. Finding Thomas's parents asleep, Williams insisted Thomas return to his police car, and proceeded to drive around several subdivisions. Williams then took Thomas to Williams's home. There, Williams began to pour himself alcoholic drinks and offered drinks to Thomas, a minor at the time. Williams ignored

---

**1.** Thomas also charges Officer Williams with numerous violations of Alabama law. Thomas originally stated state-law claims against all defendants, but these claims were dismissed as to the city and Chief Henderson based upon the parties' agreement at the pretrial conference. *See* order entered August 28, 2003 (Doc. No. 48). Thomas still asserts eight state-law tort claims against Williams, but because neither Williams nor Thomas has moved for summary judgment, Thomas's state-law claims will not be addressed at this time.

Thomas's repeated requests to return to the police station so that he might call his parents.

After several drinks, Williams asked Thomas if he had ever performed oral sex on a man and proceeded to discuss such acts. At this point, Thomas became alarmed, and, when Williams left to go to another room, Thomas kicked open a back door and fled Williams's home. Williams chased Thomas and tackled and handcuffed him. He then took Thomas home, requested that Thomas not to tell anyone what had happened, and asked Thomas to call him later.

Thomas told his parents what happened, and his father confronted Williams and asked why his son was at Williams's house at 5:00 a.m. Williams apologized and admitted he had "a problem." Thomas's father also claims to have called Chief Henderson's office twice, within two weeks of the incident, leaving messages with an unidentified employee to the effect that he needed to speak with Henderson regarding Williams. Thomas's mother reported the incident to County Sheriff Fulmer, and Sheriff Fulmer told Lieutenant Foshee that Thomas had stated that Williams had sexually assaulted him. Despite Sheriff Fulmer's declaration that he reported the complaint on behalf of Thomas during October 2001,[2] defendants contend that Thomas did not report the incident until January 16, 2002.[3]

Thomas also alleges that the police department had record of a complaint

against Williams by an individual named Nahum Romero Leal, for sexual misconduct while on duty. This complaint was lodged approximately eleven months prior to the incident at issue in this case.[4] Sargent Elijah Bearden filed the report on Romero's complaint. The complaint stated that Williams transported Romero to an area behind some old buildings, ordered Romero out of his car, and told him to put his hands on top of the car and face the wall. Romero states that when he turned around, Williams was holding his penis in his hand.[5] Romero also claims that Williams tried to reach inside his pants before taking him behind the building.[6] Chief Henderson told one of his lieutenants to investigate Romero's complaint, but the lieutenant was unable to locate Romero. Henderson also reviewed Williams's file and talked with other officers to see if they had any additional information about complaints against Williams.[7]

Approximately seven months after the incident with Thomas, a third complaint was filed against Officer Williams by Benjamin Gomez, who accused Williams of sexually assaulting him. When Williams was questioned about the incident, he admitted to having sex with Gomez while on duty. Williams was fired on January 14, 2002, after the Alabama Bureau of Investigation substantiated Gomez's complaint.

### III. 42 U.S.C.A. § 1983

Thomas claims that the defendants violated his federal constitutional rights.

---

2. Plaintiff's response to motion for summary judgment, filed July 21, 2003 (Doc. no. 38), exhibit 4 (declaration of Sheriff Billy Fulmer).

3. Defendants' motion for summary judgment, filed May 21, 2003 (Doc. no. 21), exhibit 1 (affidavit of Chief Henderson).

4. Plaintiff's response to motion for summary judgment, filed July 21, 2003 (Doc. no. 38), exhibit 7 (declaration of Sheriff Billy Fulmer).

5. Plaintiff's response to defendants' motion to summary judgment, filed July 21, 2003 (Doc. no. 38), exhibit 5 (deposition of Nahum Romero Leal), at 46–47.

6. *Id.*

7. Plaintiff's response to defendants' motion to summary judgment, filed July 21, 2003 (Doc. no. 38), exhibit 9 (deposition of Chief Henderson).

Specifically, Thomas claims that (1) he was deprived of liberty without due process of law in violation of the fourteenth amendment; and (2) he was subjected to unreasonable searches and seizure of his person in violation of the fourth amendment.[8] Thomas argues that Chief Henderson and City of Clanton are liable for these underlying constitutional deprivations because they exhibited deliberate indifference to the risk posed by Officer Williams by failing to: (1) supervise him properly, (2) investigate complaints of his misconduct, (3) enforce or implement restrictions on strip searches, (4) train police officers properly regarding strip searches, and (5) protect detainees from exploitation or abuse once under custody.[9]

Chief Henderson and the city argue that Thomas did not suffer a constitutional deprivation, that a municipality cannot be held liable under 42 U.S.C.A. § 1983 under the theory of *respondeat superior,* and that Thomas failed to produce substantial evidence that they were deliberately indifferent to the risk posed to Thomas by Williams.[10] Furthermore, Chief Henderson claims that he is entitled to qualified immunity.[11]

A. Underlying Constitutional Violations

■ In order to determine whether the City of Clanton may be held liable, "proper analysis requires [the Court] to separate two different issues when a § 1983 claim is asserted against a municipality: (1) whether plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the city is responsible for that violation." *Collins v. City of Harker*

*Heights, Texas,* 503 U.S. 115, 120, 112 S.Ct. 1061, 1066, 117 L.Ed.2d 261 (1992). Similarly, the liability of Chief Henderson in his individual capacity, under a theory of supervisory liability, must be predicated upon a finding of an underlying constitutional violation. *Cottone v. Jenne,* 326 F.3d 1352, 1360 (11th Cir.2003). Therefore, it is initially necessary to define with some precision Thomas's underlying constitutional claims.

(1) Substantive–Due–Process Claim

Thomas alleges that his rights under the fourteenth amendment were violated because "an allegation of sexual assault by a police officer [is an] alleged ... violation of the Constitution's substantive due process clause."[12] Chief Henderson and the city counter that, while Williams's acts were illegal under Alabama law, the allegation does not constitute a constitutional violation.

■ There is a right to be free from sexually motivated assaults. As several courts in the Eleventh Circuit Court of Appeals have recognized, substantive due process under the fourteenth amendment includes a right to bodily integrity. *See, e.g., Romero v. City of Clanton,* 220 F.Supp.2d 1313, 1316 (M.D.Ala.2002); *Johnson v. Cannon,* 947 F.Supp. 1567, 1572–73 (M.D.Fla.1996); *Battista v. Cannon,* 934 F.Supp. 400, 404 (M.D.Fla.1996). Furthermore, such a reading is consistent with the Supreme Court's holding in *United States v. Lanier,* 520 U.S. 259, 272 n. 7, 117 S.Ct. 1219, 1228 n. 7, 137 L.Ed.2d 432

**8.** Plaintiff's response to defendants' motion to summary judgment, filed July 21, 2003 (Doc. no. 38), at 22–23.

**9.** Complaint, filed May 31, 2002 (Doc. no. 1), at 5.

**10.** Defendants' motion to dismiss, filed May 23, 2003 (Doc. no. 22), at 6–10.

**11.** Defendants' brief in support of motion for summary judgment, filed May, 28, 2003 (Doc. no. 22), at 26–28.

**12.** Plaintiff's response to defendants' motion to summary judgment, filed July 21, 2003 (Doc. no. 38), at 22.

(1997) (rejecting argument that there is no constitutional right to be free from assault by state officials outside of a custodial setting and that all constitutional claims relating to physically abusive government conduct must arise under the fourth or eighth amendments). The fact that such allegations "may coincide with state law rights to some degree" does not bar a plaintiff from asserting a "constitutionally defined" violation of the "Fourteenth Amendment due process right to liberty, which includes the right to be free from sexually motivated physical assaults." *Romero v. City of Clanton*, 220 F.Supp.2d 1313, 1316 (M.D.Ala.2002).

Construing the facts in favor of the non-movant, Thomas has submitted substantial evidence that Williams directly violated his right to be free from sexually motivated physical assaults. Thomas alleges that Williams took him to his home in the middle of the night, made explicit sexual advances to him, and then physically restrained him when he became alarmed and attempted to escape. All of this was done against Thomas's will.[13] Thomas has submitted uncontradicted evidence that Williams engaged in deliberate acts that, by any measure, would "shock the conscience," and meet the threshold required for stating a claim for a violation of his right to substantive due process. *See, e.g. County of Sacramento v. Lewis*, 523 U.S. 833, 846, 118 S.Ct. 1708, 1717, 140 L.Ed.2d 1043 (1998).

Furthermore, Williams was clearly acting "under color of state law" when he used his position as a police officer and the authority granted to him by the position to detain Thomas without arresting, fingerprinting, or processing him, and when he forced Thomas to accompany him, in his police car, to his home, in a supposed search for Owens.[14] It is true that "not all actions by state employees are acts under color of law," *Edwards v. Wallace Community College*, 49 F.3d 1517, 1523 (11th Cir. 1995); rather, the dispositive issue in determining whether an act by state employee is an act under color of law, for purposes of § 1983, "is whether the official was acting pursuant to the power he or she possessed by state authority or acting only as private individual." *Id.* In this case, Williams's misuse of power was possible only because he was clothed with the authority of state law.[15] *Monroe v. Pape*, 365 U.S. 167, 183–84, 81 S.Ct. 473, 482, 5 L.Ed.2d 492 (1961). Therefore, Williams was acting under the color of state law, and a reasonable jury could conclude that he directly violated Thomas's substantive-due-process right to bodily integrity.

### (2) Fourth–Amendment Claim

Thomas also argues that the strip search he was subjected to by Williams violated his fourth-amendment right to be free from unreasonable searches and seizures. In *Wilson v. Jones*, 251 F.3d 1340, 1343 (11th Cir.2001), the Eleventh Circuit held that, before subjecting a detainee to a

---

13. *See* plaintiff's response to motion for summary judgment, filed July 21, 2003 (Doc. no. 38), exhibit 1 (deposition of Philip Dale Thomas, Jr.), at 49–59.

14. *See* plaintiff's response to motion for summary judgment, filed July 21, 2003 (Doc. no. 38), exhibit 1 (deposition of Thomas, Jr.), at 53–59; exhibit 3 (declaration of Philip Wayne Thomas); exhibit 4 (declaration of Sheriff Billy Fulmer).

15. Thomas explains that he followed Williams's directions, even for the periods of time he was not handcuffed, because, "I wasn't but seventeen and he was a police office, you know. I thought I was doing right." Plaintiff's response to motion for summary judgment, filed July 21, 2003 (Doc. no. 38), exhibit 1 at 53.

strip search, the fourth amendment requires an officer to have reasonable suspicion that the detainee is concealing weapons or contraband. The City of Clanton and Chief Henderson have not attempted to claim that the search of Thomas was constitutional. They have not claimed that Williams had reasonable suspicion that Thomas was concealing a weapon or contraband; in fact, the evidence points to the contrary.[16] Therefore, Chief Henderson and the city's contention that Thomas has failed to state an underlying constitutional violation on which to base municipal and supervisory liability is incorrect.

### B. City of Clanton

Having determined that a reasonable jury could conclude that Williams violated Thomas's constitutional rights, the next inquiry is whether Thomas has submitted substantial evidence that the City of Clanton is liable for Williams's underlying constitutional violations. The city argues that these claims should be dismissed because a municipality cannot be held liable under a *respondeat superior* theory of liability. The city also contends that the police department has an appropriate policy regarding how to carry out strip searches, provides adequate training on strip searches, and does not have a custom or policy of allowing officers to engage in sexual misconduct.

Thomas alleges that municipal liability is appropriate because the city evidenced deliberate indifference to the rights of third parties. Thomas claims that, by failing to adequately track and protect the rights of individuals who have been taken into custody by officers, the municipality is liable for his substantive-due-process injury. Similarly, Thomas argues that by failing to implement policies or trainings on strip

searches, the municipality is liable for the unconstitutional search he was subjected to.

 The City of Clanton is correct that a municipality cannot be held liable under a *respondeat superior* theory of liability. A municipality will be held liable for an employee's acts constituting constitutional violations only where "the municipality inadequately trains or supervises its employees, this failure to train or supervise is a city policy, and that city policy causes the employees to violate a citizen's constitution rights." *Gold v. City of Miami,* 151 F.3d 1346, 1350 (11th Cir. 1998) (citing *City of Canton v. Harris,* 489 U.S. 378, 389–91, 109 S.Ct. 1197, 1205–06, 103 L.Ed.2d 412 (1989)). A municipality can be held liable on a failure-to-train or failure-to-supervise theory only if those in supervisory positions fail to supervise subordinates in such a manner as to demonstrate "deliberate indifference" to the constitutional rights of citizens. *City of Canton,* 489 U.S. at 388, 109 S.Ct. 1197, 1205 (1989); *see also Rivas v. Freeman,* 940 F.2d 1491 (11th Cir.1991) (holding that a sheriff can be held liable in his official capacity for acts of his deputies which caused constitutional violation because he failed to institute appropriate policies and procedures for tracking individuals who had been arrested).

 A plaintiff can show that a municipality was deliberately indifferent to the need for increased supervision by demonstrating: (1) a "pattern of constitutional violations . . . such that the municipality knows or should know that corrective measures are needed," *Young v. City of Augusta,* 59 F.3d 1160, 1172 (11th Cir.1995), or (2) that the "violation of federal rights . . . [was a] highly predictable consequence

---

16. *See* plaintiff's response to motion for summary judgment, filed July 21, 2003 (Doc. no. 38), exhibit 3 (incident report noting that Owens' wife told police that the marijuana belonged to Owens).

of a failure to equip law enforcement officers with specific tools to handle recurring situations." *Bd. of Cty. Comm'rs v. Brown,* 520 U.S. 397, 409, 117 S.Ct. 1382, 1391, 137 L.Ed.2d 626 (1997). As explained below, Thomas cannot meet either of these tests.

### (1) Municipal Liability for Fourteenth–Amendment Claim

██ Thomas alleges that, even though a complaint of sexual assault had been filed with the City of Clanton police department eleven months before the incident at bar, the department had no policy requiring increased supervision of Williams or officers similarly situated; that, even after there had been a complaint of sexual misconduct, Williams was still able to take a minor to the police station, hold him there for some period of time, then take him cruising in his police vehicle, and eventually take him to his home at approximately 2:00 a.m. Thomas has submitted evidence that Williams was able to keep him in his custody for six hours without processing him, and that Williams was not required to call in and report his whereabouts or the minor's throughout this period of time.[17]

According to Thomas, his assault was possible only because the police department failed to adequately supervise officers in general,[18] and because the department failed to specifically put Williams under increased supervision after the Romero complaint. While the city maintains that the department had procedures in place to track and protect detainees,[19] Thomas argues there was a complete lack of policy and procedure for the department to ensure the safety of those in its custody.

██ Thomas's claims, even when taken as true, are not enough to establish municipal liability for Williams's acts. To put a municipality on notice that more or different supervision or training is required, past incidents must show a pattern of "widespread prior abuse." *Wright v. Sheppard,* 919 F.2d 665, 674 (11th Cir. 1990); *see also Wilson v. City of Chicago,* 6 F.3d 1233, 1240 (7th Cir.1993), *cert. denied,* 511 U.S. 1088, 114 S.Ct. 1844, 128 L.Ed.2d 470 (1994) ("Deliberate or reckless indifference to complaints must be proved in order to establish that an abuse practice as actually been condoned by those responsible for making municipal policy."). While there is no bright line regarding the number of similar violations that must occur before a municipality will be deemed to be on notice, "it is the rare instance that only one previous incident will be sufficient to place a municipality on notice of 'widespread abuse' constituting deliberate indifference." *Owens v. City of Fort Lauderdale,* 174 F.Supp.2d 1298, 1312 (S.D.Fla.2001). Thomas has not met his burden—he cannot demonstrate a "pattern of constitutional violations ... such that the municipality knows or should know that corrective measures are needed" by relying only on the Romero complaint, which had not been substantiated, and the Gomez complaint, which was filed six months *after* the incident involving Thomas. *Young v. City of Augusta,* 59 F.3d 1160, 1172 (11th Cir.1995).

---

17. *See* plaintiff's response to motion for summary judgment, filed July 21, 2003 (Doc. no. 38), exhibit 9 (deposition of Chief James Henderson), at 14–15.

18. *See* plaintiff's response to motion for summary judgment, filed July 21, 2003 (Doc. no.

38), exhibit 6 (deposition of Elijah Bearden), at 8–9.

19. *Id.* at 9–17; *see also* exhibit 9 (deposition of Chief Henderson), at 27–32.

### (2) Municipal Liability for Fourth–Amendment Claim

Thomas also claims that the municipality should be held liable for the violation of his fourth-amendment right because its officers exhibited deliberate indifference to the risk created by a failure to train officers in the proper methods of strip searches.

While it is unclear whether or not the police department actually had a policy on visual body cavity searches, or properly trained officers on how to conduct legal searches,[20] it is unnecessary to decide this. Thomas would also need to show that the lack of training was the "moving force" behind his injuries in order to properly assert a claim against the municipality, and this he cannot do. In such a situation, where it appears that Williams intentionally violated Thomas's rights, no amount of training would have prevented the violation. *Sewell v. Town of Lake Hamilton,* 117 F.3d 488, 490 (11th Cir.1997), (holding that "where the proper response ... is obvious to all without training or supervision, the failure to train or supervise" does not support an inference of deliberate indifference) (quoting *Walker v. City of New York,* 974 F.2d 293, 299–300 (2nd Cir.1992), *cert. denied,* 507 U.S. 972, 113 S.Ct. 1412, 122 L.Ed.2d 784 (1993)). Neither party is alleging that Williams conducted an inappropriate search because he was confused about the situations under which a strip search would be legal or that Williams needed additional guidance from his supervisors. Instead, the evidence suggests Williams intended to conduct an unconstitutional strip search. Therefore, as *Sewell* requires, summary judgment is granted regarding municipal liability for Thomas's fourth-amendment claim.

### C. Chief Henderson

Thomas sues Chief Henderson in his individual capacity, alleging that Henderson is liable for Williams's violation of Thomas's rights under the fourteenth and fourth amendments, on the basis of a failure to supervise Williams. As the Eleventh Circuit has explained, "supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." *Cottone v. Jenne,* 326 F.3d 1352, 1360 (11th Cir.2003).

The standard for the imposition of liability upon a supervisor defendant who was not present when the constitutional violation occurred is "extremely rigorous." *Braddy v. Florida Dept. of Labor and Employment Sec.,* 133 F.3d 797, 802 (11th Cir.1998). Therefore, Thomas must show "a causal connection," which "can be established 'when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so,' or when the supervisor's improper 'custom or policy ... resulted in deliberate indifference to constitutional right.'" *Gonzalez v. Reno,* 325 F.3d 1228, 1234–35 (11th Cir.2003) (internal citations omitted).

### (1) Chief Henderson's Liability for Fourteenth–Amendment Claim

Thomas cannot show that Chief Henderson is liable in his individual capacity under a theory of supervisory liability. While Henderson may have been negligent with regard to his supervision of Williams,

---

**20.** Sergeant Beard, a supervisor at the City of Clanton police department, who has been employed there for 19 years, stated that he had never received any in-house training regarding how to conduct a strip search. Plaintiff's response to motion for summary judgment, filed July 21, 2003 (Doc. no. 38), exhibit 6, (deposition of Elijah Beard), at 17–18.

Henderson's actions were not "constitutionally inadequate" for § 1983 purposes. *Braddy*, 133 F.3d at 802. Henderson attempted to investigate the Romero complaint by reviewing Williams's file, speaking directly with Williams, asking other officers if they had additional information regarding the charges, and attempting to contact Romero for further questioning. One previous, unsubstantiated complaint against Williams, which was investigated to some extent, cannot support a claim that Henderson was deliberately indifferent to the rights of third parties with whom Williams came in contact. *Compare Gutierrez–Rodriguez v. Cartagena*, 882 F.2d 553, 563–66 (1st Cir.1989) (upholding a jury verdict holding a supervisor liable where there had been ten complaints against the officer and the supervisor took no actions to formally investigate or discipline the officer), *with Walker v. Norris*, 917 F.2d 1449, 1457 (6th Cir.1990) (upholding a directed verdict in favor of defendant-supervisor where investigation was undertaken and report was submitted to disciplinary authorities).

### (2) Chief Henderson's Liability for Fourth–Amendment Claim

 Regarding the unconstitutional strip search, Thomas has not established sufficient evidence to hold Chief Henderson liable in his individual capacity under a supervisor liability theory. Thomas has not established that there was a history of widespread abuse of strip searches that would put Henderson on notice. Henderson in no way participated directly in the search, or personally condoned it. As stated above, any deficiency in training or police department policy in this case cannot meet the standard of deliberate indifference to Thomas's constitutional rights. Although the Romero claim may have put Henderson on notice regarding a need to monitor Williams's interactions with the public in general more carefully, Thomas cannot point to a policy or lack of policy regarding strip searches that Henderson should have known, if implemented, would have avoided Thomas's injuries. It is this kind of specificity which the deliberate indifference standard requires.

### IV. CONCLUSION

The City of Clanton and Chief Henderson's motion for summary judgment is due to be granted. Thomas's federal and state claims against defendant Scott Williams are still pending.[21] An appropriate judgment will be entered.

### JUDGMENT

In accordance with the memorandum opinion entered today, it is the ORDER, JUDGMENT, and DECREE of the court

(1) The motion for summary judgment, filed by defendants City of Clanton and James Henderson on May 28, 2003 (Doc. no. 21), is granted.

(2) Judgment is entered in favor of defendants City of Clanton and Henderson, with plaintiff Philip Dale Thomas Jr. taking nothing by his complaint.

· It is further ORDERED that the motion to dismiss, filed by defendants City of Clanton and Henderson on June 25, 2002 (Doc. no. 5), is denied as moot.

Plaintiff Thomas's federal and state claims against defendant Scott Williams are still pending.

It is further ORDERED that costs are taxed against plaintiff Thomas, for which execution may issue.

The clerk of the court is DIRECTED to enter this document on the civil docket as

---

**21.** *See supra* note 1.

a final judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure.