Loretta McCLURE, Plaintiff,

v.

HOUSTON COUNTY, ALABAMA, Houston County Sheriff's Department, Sheriff Lamar Glover, individually and in his official capacity, and The Estate of Eric Sewell, Defendants.

Civil Action No. 02–T–1223–S.

United States District Court,
M.D. Alabama,
Northern Division.

Dec. 30, 2003.

John E. Byrd, Jr. Matthew C. Lamere, Law Office of Matthew C. Lamere, Dothan, AL, for Plaintiff.

Gary Clayborn Sherrer, Jackson, Rhodes, Sherrer & Terry, Dothan, AL, for Defendants.

## OPINION

MYRON H. THOMPSON, District Judge.

Plaintiff Loretta McClure filed this action against defendant Houston County, Alabama; defendant Houston County Sheriff's Department; defendant Houston County Sheriff Lamar Glover, in his individual and official capacities; and defendant estate of Eric Sewell, a now-deceased Houston County Deputy Sheriff.[1]

---

1. McClure also named in her original complaint "other unknown law enforcement offi-

McClure brought her action under 42 U.S.C.A. §§ 1983, 1985, and 1986, and under Alabama state law. This court's jurisdiction is proper under 28 U.S.C.A. §§ 1331 and 1367. This matter is now before the court on the motions for summary judgment filed by Houston County, Sheriff Glover, and the Houston County Sheriff's Department. Their motions are due to be granted in their entirety.

## I. BACKGROUND

On September 5, 2001, McClure reported a burglary of her home to the Houston County Sheriff's Department, and Deputy Sewell was assigned to the investigation. On September 16, 2001, McClure and her husband found some of their stolen items at a friend's house, and Deputy Sewell assisted them in recovering the items. At that time, Deputy Sewell told McClure that he needed to come to her house the next day to "wrap things up." McClure told Deputy Sewell to come to her house after 7:00 p.m. when her husband would be home.

Instead of waiting until after 7:00 p.m., Deputy Sewell showed up at McClure's house the next day at 12:30 p.m. He was wearing his uniform, badge, and gun. Deputy Sewell told McClure that he needed to look around her house. Once he was inside her house, Deputy Sewell raped McClure. The next day, Deputy Sewell committed suicide.

There is evidence that this was not Deputy Sewell's only violent encounter with women. In October 1998, Deputy Sewell was charged with third-degree assault in connection with a domestic disturbance. The charges were dismissed in January 1999. There is also testimony from Lieutenant Susan Seay of the Houston County Sheriff's Department that, after Deputy Sewell raped McClure, a social worker from a domestic-violence agency reported to her that she had heard that Deputy Sewell had previously engaged in similar conduct.

## II. LEGAL STANDARDS

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Under Rule 56, the party seeking summary judgment must first inform the court of the basis for the motion, and the burden then shifts to the non-moving party to demonstrate why summary judgment would not be proper. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *see also Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115–17 (11th Cir.1993) (discussing burden-shifting under Rule 56). The non-moving party must affirmatively set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials in the pleadings. Fed.R.Civ.P. 56(e).

The court's role at the summary-judgment stage is not to weigh the evidence or to determine the truth of the matter, but rather to determine only whether a genuine issue exists for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

cers employed by Houston County" and "fictitious defendants A, B, C." Complaint, filed November 4, 2002, p. 1. McClure never amended her complaint to add actual defendants, however, and fictitious party practice is not permitted in federal court. *New v. Sports & Recreation, Inc.,* 114 F.3d 1092, 1094 n. 1 (11th Cir.1997). The court therefore will not consider McClure's claims against these fictitious parties. *Id.; Harris v. Palm Harbor Homes, Inc.,* 198 F.Supp.2d 1303, 1304 n. 6 (M.D.Ala.2002) (McPherson, M.J.).

In doing so, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## III. DISCUSSION

Houston County and Sheriff Glover, on his own behalf and on behalf of the Houston County Sheriff's Department, move for summary judgment on a variety of grounds.

### A. Houston County

#### 1. § 1983 Claim

■ McClure brought a claim under § 1983 alleging that Deputy Sewell violated her rights protected by the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution and that Houston County is liable for those violations because Deputy Sewell was insufficiently trained and supervised. McClure's theory appears to be either that Houston County is liable for Sheriff Glover and the Sheriff's Department's failure to train and supervise Deputy Sewell or that Houston County itself failed to train and supervise Deputy Sewell.

With respect to the first theory, Houston County moves for summary judgment on the ground that the Houston County Sheriff is not a 'policymaker' for the County. Local governments may be held liable under § 1983 only where the allegedly unconstitutional act implements a policy of the local governmental body. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978); *Turquitt v. Jefferson County*, 137 F.3d 1285, 1287 (11th Cir.1998). In a § 1983 case, then, one of the court's "task[s] is to identify those officials or governmental bodies who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue." *McMillian v. Monroe County*, 520 U.S. 781, 784–85, 117 S.Ct. 1734, 1736, 138 L.Ed.2d 1 (1997) (internal quotations omitted). In other words, the court must determine whether the person or entity that made the policy at issue speaks for the government entity being sued. This inquiry asks "whether governmental officials are final policymakers for the local government in a particular area, or on a particular issue," and it is "dependent on an analysis of state law." *Id.* at 785–86, 117 S.Ct. at 1737. Thus, the specific question in this case is whether the Houston County Sheriff and the Sheriff's Department are 'policymakers' for Houston County in the area of hiring, training, and supervising deputy sheriffs.

Under Alabama law, sheriffs are state, and not county, officers. The Alabama Constitution includes sheriffs among the enumerated officers of the state executive department. Ala. Const. art. V, § 112 ("The executive department shall consist of a governor, lieutenant governor, attorney-general ..., and a sheriff for each county."). The Alabama Supreme Court, relying on this section of the state constitution, has repeatedly held that sheriffs and deputy sheriffs are state officials and not county officials. *See, e.g., Parker v. Amerson*, 519 So.2d 442, 442 (Ala.1987); *Hereford v. Jefferson County*, 586 So.2d 209, 210 (Ala. 1991). Thus, under Alabama law, sheriffs are not county employees or agents, much less policymakers.

The United States Supreme Court has held that, in Alabama, sheriffs do not act as 'policymakers' for the county in the area of law enforcement for § 1983 purposes. *McMillian*, 520 U.S. at 793, 117 S.Ct. at 1740. Walter McMillian's conviction for capital murder was reversed by the Ala-

bama Court of Criminal Appeals on the grounds that the state had suppressed exculpatory evidence in violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). *McMillian v. Alabama,* 616 So.2d 933, 942–48 (1993). McMillian subsequently brought a § 1983 claim against Monroe County and the three officials in charge of investigating the murder for which he was convicted, including Monroe County Sheriff Tom Tate. *McMillian,* 520 U.S. at 783–84, 117 S.Ct. at 1736. The issue before the Supreme Court was whether Monroe County could be held liable for Sheriff Tate's actions. "The parties agree[d] that [Sheriff Tate] is a 'policymaker' for § 1983 purposes, but they disagree[d] about whether he is a policymaker for Monroe County or for the State of Alabama." *Id.* at 783, 117 S.Ct. at 1736.

The Court held that "Alabama sheriffs, when executing their law enforcement duties, represent the State of Alabama, not their counties." *Id.* at 793, 117 S.Ct. at 1740. In reaching its holding, the Court cited article V, § 112 of the Alabama Constitution and the *Parker* decision of the Alabama Supreme Court. The Court also noted that, under the Alabama Code, sheriffs are given "complete authority to enforce the state criminal law in their counties," while county governments, which derive all their authority from the State, are given no authority in the area of law enforcement. *Id.* at 790, 117 S.Ct. at 1739 (citing 1975 Ala.Code §§ 36–22–3(4) & 11–3–11). The Court thus affirmed the Eleventh Circuit's dismissal of McMillian's § 1983 action against the county. In light of the clear Alabama and federal law holding that Sheriff Glover is not a policymaker for Houston County, Houston County's motion for summary judgment as to McClure's § 1983 claim is due to be granted.

To the extent that McClure's claim is that the county itself failed to supervise or train Deputy Sewell, summary judgment is also appropriate. A county "can be held liable on a failure-to-train or failure-to-supervise theory only if those in supervisory positions fail to supervise subordinates in such a manner as to demonstrate 'deliberate indifference' to the constitutional rights of citizens." *Thomas v. City of Clanton,* 285 F.Supp.2d 1275, 1282 (M.D.Ala.2003) (Thompson, J.) (quoting *City of Canton v. Harris,* 489 U.S. 378, 388, 109 S.Ct. 1197, 1205, 103 L.Ed.2d 412 (1989)). "A plaintiff can show that a [county] was deliberately indifferent to the need for increased supervision by demonstrating: (1) a pattern of constitutional violations such that the [county] knows or should know that corrective measures are needed, or (2) that the violation of federal rights was a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." *Id.* (citations omitted). First, as discussed above, Houston County does not supervise deputy sheriffs at all. Second, assuming that the county could have supervised Deputy Sewell, McClure has not shown any evidence that Houston County was deliberately indifferent to the need for greater supervision. At best, McClure's evidence shows only that the Sheriff's Department might have been on notice of a pattern of constitutional violations by Deputy Sewell. None of McClure's evidence suggests that Houston County was aware of any constitutional violations on Deputy Sewell's part. Summary judgement is therefore appropriate in favor of the county.

### 2. § 1985 and § 1986 Claims

In her complaint, McClure alleged violations of 42 U.S.C.A. §§ 1985 and 1986. Houston County moves for summary judgment. "The elements of a cause of action

under section 1985(3) are '(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.' " *Lucero v. Operation Rescue of Birmingham,* 954 F.2d 624, 627–28 (11th Cir.1992) (quoting *United Bhd. of Carpenters & Joiners of Am., Local 610 v. Scott,* 463 U.S. 825, 828–29, 103 S.Ct. 3352, 3356, 77 L.Ed.2d 1049 (1983)). McClure has not set forth specific facts showing a genuine issue for trial on her conspiracy claim. Indeed, McClure has offered no facts in opposition to Houston County's motion. Therefore, summary judgement is appropriate on McClure's § 1985 claim. Because the existence of a § 1985 conspiracy is a prerequisite for a claim under § 1986, *Park v. City of Atlanta,* 120 F.3d 1157, 1160 (11th Cir.1997), Houston County's motion for summary judgement as to McClure's § 1986 claim is also due to be granted.[2]

### 3. State–Law Claims

■ McClure alleged a variety of state-law claims against Houston County, presumably on the basis of *respondeat superior.* Specifically, McClure alleged assault and battery, negligence, wantonness, false imprisonment, and outrage. Houston County moves for summary judgment on the ground that, under Alabama law, it cannot be held liable for the actions of the sheriff or a deputy sheriff because they are state officials. As discussed above, the Alabama Supreme Court has held that sheriffs are state officials and that county governments are thus not liable for their illegal acts. *See, e.g., King v. Colbert*

*County,* 620 So.2d 623, 625 (Ala.1993); *Hereford,* 586 So.2d at 210. Because state law is clear that the county cannot be held liable for an act—or failure to act—of the sheriff, summary judgement is due to be granted on McClure's state-law claims.

### B. Houston County Sheriff's Department

■ Sheriff Glover, on behalf of the Houston County Sheriff's Department, moves for summary judgment on McClure's state and federal claims brought against the Sheriff's Department on the basis that it is not a legal entity subject to suit. *Dean v. Barber,* 951 F.2d 1210, 1214 (11th Cir.1992); *King,* 620 So.2d at 626 ("The Colbert County Sheriff's Department is not a legal entity. Therefore one cannot maintain an action against it."). McClure concedes that summary judgment is appropriate as to her claims against the Sheriff's Department.

### C. Sheriff Lamar Glover

#### 1. § 1983 Claim

· McClure alleged a § 1983 claim against Sheriff Glover in his official capacity and in his individual capacity, claiming that Sheriff Glover is liable for the actions of Deputy Sewell. McClure sought both damages and injunctive relief. Sheriff Glover moves for summary judgment.

■ Sheriff Glover moves for summary judgment on McClure's claims against him in his official capacity on the basis of the immunity conferred by the Eleventh Amendment. U.S. Const. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or

---

**2.** This conclusion applies equally to McClure's § 1985 and § 1986 claims against

Sheriff Glover; as such, summary judgment is appropriate on those claims as well.

Subjects of any Foreign State."). "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity or Congress has abrogated the state's immunity. Alabama has not waived its Eleventh Amendment immunity, and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe County,* 116 F.3d 1419, 1429 (11th Cir.1997) (citations omitted). As discussed above, under Alabama law, sheriffs are state officials and are thus immune under the Eleventh Amendment. *Parker,* 519 So.2d at 442; *Hereford,* 586 So.2d at 210; *see also Lancaster,* 116 F.3d at 1429 (affirming district court's ruling that "Sheriff Tate is a state official and, therefore, Tate was entitled to summary judgment on [plaintiff's] § 1983 official capacity claims"). Sheriff Glover is therefore entitled to summary judgment on McClure's § 1983 claim brought against him in his official capacity.[3]

McClure argues that, before granting summary judgment on Eleventh Amendment grounds, the court must determine whether the state or county would pay any damages awarded in this case. *See Carr v. City of Florence,* 916 F.2d 1521, 1527 (11th Cir.1990) (Clark, J., specially concurring). Even if the court were to find McClure's legal argument persuasive, however, summary judgment in Sheriff Glover's favor would still be appropriate because McClure has not offered any evidence to show that Houston County, and not the State, would be liable for any judgment against Sheriff Glover.

McClure also sued Sheriff Glover in his individual capacity as the supervisor of Deputy Sewell. "[S]upervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." *Cottone v. Jenne,* 326 F.3d 1352, 1360 (11th Cir.2003). The standard for the imposition of liability upon a supervisor defendant who was not present when the constitutional violation occurred is "extremely rigorous." *Braddy v. Florida Dept. of Labor and Employment Sec.,* 133 F.3d 797, 802 (11th Cir.1998). The necessary "causal connection" "can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so, or when the supervisor's improper custom or policy resulted in deliberate indifference to constitutional rights." *Gonzalez v. Reno,* 325 F.3d 1228, 1234–35 (11th Cir.2003) (internal quotations omitted).

McClure has simply not presented sufficient evidence to warrant a trial on her claim against Sheriff Glover in his supervisory capacity. First, there is no evidence that Sheriff Glover's "improper custom or policy resulted in deliberate indifference to constitutional rights." *Gonzalez,* 325 F.3d at 1234–35. Second, McClure's evidence as to Deputy Sewell's history of abuse does not create a genuine issue of material fact. McClure cites Deputy Sewell's 1998 arrest for third-degree assault in connection with a domestic disturbance. There is no evidence, however, that Sheriff Glover was

---

**3.** Eleventh Amendment immunity protects state officials from only suits for money damages; actions for prospective injunctive relief are outside the protection offered by the Eleventh Amendment. *See, e.g., Carr v. City of Florence,* 916 F.2d 1521, 1524 n. 2 (11th Cir.1990). In this case, McClure requested injunctive relief along with money damages. However, because McClure has not offered any evidence to establish Sheriff Glover's liability as Deputy Sewell's supervisor, *see infra,* summary judgment is appropriate on all of McClure's § 1983 claim for injunctive relief.

aware of this arrest. In fact, William Land,[4] in his deposition, testified that he knew that Deputy Sewell had been in a fight but was never told that Deputy Sewell was arrested and charged.[5] Furthermore, a single arrest for assault does not constitute a "history of widespread abuse." *Id.* McClure also cites the testimony of Lieutenant Seay of the Sheriff's Department that she heard a rape-victim counselor say that she had heard that Deputy Sewell had "engaged in similar conduct" on prior occasions.[6] Lieutenant Seay testified that she heard this remark at the hospital on the night of McClure's rape after she and the rape-victim counselor had gone to speak to McClure. Setting aside the problem of whether such hearsay evidence can be considered at the summary-judgment stage, *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir.1999) ("The general rule is that inadmissible hearsay cannot be considered on a motion for summary judgment.") (internal quotation omitted), at best, this evidence establishes that the Sheriff's Department was on notice that Deputy Sewell had raped other women only after he had raped McClure. Given the "extremely rigorous" standard for supervisory liability under § 1983, *Braddy*, 133 F.3d at 802, and the paucity of evidence establishing a causal connection between Deputy Sewell's conduct and anything that Sheriff Glover did or did not do, the court finds that summary judgment is appropriate on McClure's § 1983 claim against Sheriff Glover.

### 2. State–Law Claims

■ McClure alleged a number of state-law claims against Sheriff Glover in his official capacity and in his individual capacity. In turn, Sheriff Glover moves for summary judgment on the basis of absolute immunity and discretionary-function immunity.

As to McClure's state-law claims against Sheriff Glover in his official capacity, he is absolutely immune from suit as a state official. Ala. Const. art. I, § 14; *Alexander v. Hatfield*, 652 So.2d 1142, 1143 (Ala. 1994) ("A sheriff is an employee of the State and, as such, is immune from suit, in his official capacity, for negligent performance of his statutory duties."); *Parker*, 519 So.2d at 442–443 ("A sheriff is an executive officer of the State of Alabama, who is immune from suit under Article I, § 14, Alabama Constitution of 1901, in the execution of the duties of his office."). Summary judgment is thus appropriate in favor of Sheriff Glover.[7]

4. It is not clear whether Land works for the Sheriff's Department or Houston County. The court construes the evidence in the light most favorable to the plaintiff and assumes that Land works for the Sheriff's Department.

5. Response to Defendants' (Lamar Glover and Houston County Sheriff's Department) Motion for Summary Judgment, filed October 24, 2003, Exh. 4. Deposition of William Land, p. 65.

6. Response to Defendants' (Lamar Glover and Houston County Sheriff's Department) Motion for Summary Judgment, filed October 24, 2003, Exh. 7. Deposition of Susan Leay, p. 93.

7. Sheriff Glover also argues that the absolute immunity conferred by article I, § 14 of the Alabama Constitution protects him from McClure's state-law suit against him in his individual capacity. There is case law suggesting that absolute immunity applies to suits against state officials in their individual capacity. *See, e.g., Tinney v. Shores*, 77 F.3d 378, 383 n. 3 (11th Cir.1996). However, under Alabama law, state officials are entitled to absolute immunity in their personal capacity only "when the action is, in effect, one against the state." *Alexander*, 652 So.2d at 1143 (citing *Phillips v. Thomas*, 555 So.2d 81, 83 (Ala. 1989)). Further, in *Phillips*, the Alabama Supreme Court noted that actions in the nature of negligence claims brought against state officials in their personal capacities, even when based on acts "committed in the line and scope of employment," are not 'actions against the state.' 555 So.2d at 83; *see also White v. Birchfield*, 582 So.2d 1085, 1086 (Ala.1991) ("We have consistently held that a state employee is not entitled to absolute im-

■ With respect to McClure's claims brought against him in his personal capacity, Sheriff Glover is entitled to discretionary-function immunity.

> "Every peace officer ... who is employed or appointed pursuant to the Constitution or statutes of this state ... and whose duties prescribed by law ... include the enforcement of, or the investigation and reporting of violations of, the criminal laws of this state, and who is empowered by the laws of this state to execute warrants, to arrest and to take into custody persons who violate, or who are lawfully charged by warrant, indictment, or other lawful process, with violations of, the criminal laws of this state, shall at all times be deemed to be officers of this state, and as such shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties."

1975 Ala.Code § 6–5–338. This statute extends discretionary-function immunity to law-enforcement officers "unless the officer's conduct is so egregious as to amount to willful or malicious conduct or conduct engaged in in bad faith." *Couch v. City of Sheffield,* 708 So.2d 144, 153 (Ala.1998). Under § 6–5–338, the court must first ask whether the officer was engaged in a discretionary function. If so, the burden shifts to the plaintiff to show that the state officer acted in bad faith, with malice or willfulness in order to deny immunity. *Sheth v. Webster,* 145 F.3d 1231, 1238–39 (11th Cir.1998). "Discretionary acts have been defined as 'those acts to which there is no hard and fast rule as to the course of conduct that one must or must not take and those acts requiring exercise in judgment and choice and involving what is just

and proper under the circumstances.'" *Id.* at 1239 (quoting *Wright v. Wynn,* 682 So.2d 1, 2 (Ala.1996)). "[H]iring, training, and supervision ... are within the line and scope of the officers' law enforcement duties and require the exercise of judgment under the given circumstances." *Hardy v. Town of Hayneville,* 50 F.Supp.2d 1176, 1195 (M.D.Ala.1999) (Albritton, J.); *see also Phillips,* 555 So.2d at 85 ("With respect to the claim ... for negligent training and supervision ..., we have little difficulty concluding that the exercise of such functions is, for the most part, discretionary in nature."). Therefore, Sheriff Glover's acts with regard to training and supervising Deputy Sewell were discretionary, and the burden is on McClure to show that Sheriff Glover "acted in bad faith, with malice or willfulness." *Sheth,* 145 F.3d at 1238–39. McClure cannot meet this burden as she has no evidence whatsoever tying Sheriff Glover to Deputy Sewell's actions. Therefore, summary judgement is due to be granted on McClure's state-law claims against Sheriff Glover in his personal capacity.

## IV. CONCLUSION

For the reasons given above, summary judgment is due to be granted in favor of Houston County, the Houston County Sheriff's Department, and Sheriff Lamar Glover. McClure's claim against the estate of Eric Sewell is still pending; the estate has yet to respond to the complaint in this case.

An appropriate judgment will be entered.

---

munity from claims based on personal injury allegedly caused by the employee's negligent conduct."). The court need not reach this

issue, however, because it finds that Sheriff Glover is entitled to discretionary-function immunity.